Henry Timmons DIGHTON, Plaintiff,

v.

James COFFMAN, Joe V. Harmon, and E. W. Hartwig, as the Review Committee for Piatt County, Illinois, appointed by the Secretary of Agriculture, pursuant to the provisions of the Agricultural Adjustment Act of 1938, as amended, Defendants.

No. 1648–D.

United States District Court
E. D. Illinois.
June 4, 1959.

**116**

Robert P. Shonkwiler, Monticello, Ill., for plaintiff.

Casper Murphy, Department of Agriculture, Chicago, Ill., for defendants.

PLATT, Chief Judge.

Plaintiff, Henry Timmons Dighton, has been the owner and operator of a farm of about 435 acres of crop land in Piatt County, Illinois, since prior to 1953. For the planting years 1954, 1955, 1956 and 1957 his base acreage for wheat on his farm was fixed at 110 acres by the County ASC Committee. In 1958 in accordance with the instructions of the State ASC Committee, the County ASC Committee determined wheat acreage allotments upon the historical average of wheat planted as provided in § 728.917 (b). Because plaintiff failed to plant wheat in 1954, his acreage for that year was fixed at 0 for the purpose of computing the historical average. Consequently, his base acreage was reduced to 82 acres by the County ASC Committee, which cut his wheat acreage allotment to be harvested in 1959 to 49.3 acres. Plaintiff was dissatisfied with his allotment or marketing quota of 49.3 acres and made application for review. After the first hearing on July 18, 1959 the Review Committee denied his appeal, and on rehearing on December 16, 1958, the Committee affirmed its prior determination.

The controversy stems from the following facts: Section 334 of the Agricultural Adjustment Act (7 U.S.C.A. § 1334) was amended by Public Law 690, 83rd Congress, approved August 28, 1954, to add a new section (f) which reads as follows:

" '(f) Any part of any 1955 farm wheat acreage allotment on which wheat will not be planted and which is voluntarily surrendered to the county committee shall be deducted from the allotment to such farm and may be reapportioned ·by the county committee to other farms in the same county receiving allotments in amounts determined by the county committee to be fair and reasonable on the basis of past acreage of wheat, tillable acres, crop rotation practices, type of soil, and topography. If all of the allotted acreage voluntarily surrendered is not needed in the county, the county committee may surrender the excess acreage to the State committee to be used for the same purposes as the State acreage reserve under subsection (c) of this section. Any allotment transferred under this provision shall be regarded for the purposes of subsection (c) of this section as having been planted on the farm from which transferred rather than on the farm to which transferred, except that this shall not operate to make the farm from which the allotment was transferred eligible for an allotment as having wheat planted thereon during the three-year base period: *Provided*, That notwithstanding any other pro-

visions of law, any part of any 1955 farm acreage allotment may be permanently released in writing to the county committee by the owner and operator of the farm, and reapportioned as provided herein. Acreage surrendered, reapportioned under this subsection, and planted shall be credited to the State and county in determining future acreage allotments.' "

On September 24, 1954, at 8:51 a. m., the Secretary of Agriculture delivered to the Director, Division of the Federal Register, for publication, a regulation which was printed in the Federal Register on September 25, 1954, (19 F.R. 6157) setting forth the amendment by Congress and reciting:

"The purpose of this amendment is to provide for the release and reapportionment of unused 1955 farm wheat acreage allotments which are voluntarily released to the county committee.

"Since farmers in many areas are now preparing to seed wheat for the 1955 crop, it is imperative that they be notified of this amendment and of any revised farm acreage allotments resulting therefrom as soon as possible. Accordingly, it is hereby found that compliance with the public notice, procedure, and 30-day effective date provisions of the Administrative Procedure Act [5 U.S.C.A. § 1001 et seq.] is impracticable and contrary to the public interest, and the amendment herein shall become effective upon filing of this document with the Director, Division of the Federal Register."

The regulation stated in part:

"[728.518] (b) Released voluntarily to county committee. Any part of any 1955 farm wheat acreage allotment on which wheat will not be planted in 1955 and which is voluntarily released to the county committee by the closing date established by the State committee for the entire State, or for areas in the State if there is a substantial difference in planting dates for different areas in the State, which shall be the date on which the planting of wheat normally becomes general on farms in the State or area, shall be deducted from the wheat acreage allotment for such farm and may be reapportioned by the county committee not later than the date established by the State committee, which shall be the latest date on which wheat can normally be planted on farms in the State or area with reasonable expectations of producing an average crop, to other farms receiving allotments in the same county in amounts determined to be fair and reasonable on the basis of the wheat acreage for the years 1952 and 1953, tillable acres, crop rotation practices, type of soil, and topography, but without regard to the limitations imposed under § 728.-516. If all the allotted acreage voluntarily released is not needed in the county, the county committee may surrender the excess acreage to the State committee to be used for new farm allotments as provided under § 728.522, but without regard to the limitation imposed under § 728.521 with respect to the wheat acreage indicated by cropland, soil type, and topography. Any wheat acreage allotment released for 1955 only shall, in determining future wheat acreage allotments, be regarded as having been planted on the farm releasing such allotments if wheat was seeded on such farm for harvest as grain in at least one of the three years immediately preceding the year for which the allotment is determined. Any part of the farm acreage allotment may be permanently released in writing to the county committee by the owner and operator of the farm and reapportioned as provided in this

paragraph, in which case the farm from which the allotment is released shall be considered as having no wheat on such released acreage for any of the 1952, 1953, and 1954 crops. In determining future farm wheat acreage allotments, the acreage planted for harvest as grain in 1955 of reapportioned acreage allotment under this paragraph shall not be considered. For purposes of determining future State and county acreage allotments, reapportioned acreage will be credited to the State and to the county in which such acreage was planted.

\*　　\*　　\*　　\*　　\*

"Done at Washington, D. C., this 22d day of September 1954."

The State Committee, on September 21, 1954, pursuant to instructions of the Secretary, fixed October 1, 1954 as the closing date for farmers to release unused acreage allotments and October 15, 1954 as the final date for farmers desiring additional allotments to apply for additional acreage. (County Committee's Ex. No. 1.)

In response to a request from the Illinois ASC Office of October 22, 1954, (County Committee's Ex. No. 3) the office manager of the Piatt County ASC Office reported on October 25, 1954, "that there were not any acreage of 1955 wheat allotments released and reapportioned under the provisions of recent legislation, in Piatt County." (County Committee's Ex. No. 4.)

At the first hearing, plaintiff, by letter informed the Review Committee that he was unable to plant wheat in 1954 for the reason that he was changing from a corn picker to a picker sheller operation and was unable to plant any wheat or to hire anyone to do it for him, and that due to a change in operation on the farm he should be credited in 1958 with having planted the wheat in 1954. At the first hearing the County Review Committee made the following findings and conclusions:

"Findings of Fact

"In the fall of 1954, Mr. Dighton did not plant any wheat because they were changing from picker to picker sheller operation for corn. They did not have time to 'plant' any wheat, so they tried to hire someone to plant the wheat. They could not find anyone to plant their wheat, so they decided not to plant any wheat. Mr. Dighton stated at the time of change in 1954 that he felt the picker sheller operation was more important than seeding wheat."

"Conclusions

"The review committee did not see where Mr. Dighton had a change in operation since the farm had the same owner and operator as previously.

"Our regulations No. 1023 (Wheat–55–1) stated no diversion credit would be given a producer if he did not plant any wheat for harvest in 1955."

At the second hearing plaintiff testified substantially to the facts set forth in his letter and in addition stated that he had a base wheat acreage for 1954, 1955, 1956 and 1957 of 110 acres and had planted his full marketing quota for each year except '54; that on October 15 he called Eddie Stout, who was then the County ASC Office Manager, and told him that he was not planting any wheat and was releasing his wheat acreage for the year; that Stout "told him there is no consequence." Evidence was introduced at the hearing that the State ASC Committee received a telegram under date of May 15 from the Secretary of Agriculture advising of an amendment to § 728.917 by the addition of subsection (d) (Said amendment issued May 19, 1958 and was published in 23 F.R. 3511[1] on May 22, 1958.) allowing County Committees, with the approval of the State Committee, to establish base acreages by a carry-over method using the base acreages for the prior year. After

---

1. See note 2.

receipt of this telegram the State ASC Committee held a meeting on May 19 and 20, 1958, at which this amendment was discussed and it was there determined that only the historical average method would be used in Illinois, and the County Committees were so instructed. After the second hearing the County Review Committee made the following findings and conclusions, viz.:

"Findings of Fact

"1. No notice was received by the Piatt County ASC Committee or the Office Manager of the Committee or anyone connected with the Committee on or prior to October 1, 1954, of a determination by the applicant to release his 1955 wheat acreage allotment so that the same might be re*apro*rtioned to other farms.

"2. October 1, 1954 was the closing date established by the Illinois State ASC Committee for the entire State of Illinois for the voluntary release of any part of a farm wheat acreage allotment for reapportionment to other farms in accordance with 7 C.F.R. 728.518(b).

"3. The records of the Piatt County ASC Committee do not contain a Form MQ–14, wheat executed by *by* the applicant, which form was *required under official instructions* to be executed by a farmer who desired to release any part of his 1955 farm wheat acreage allotment for reapportionment.

"4. In response to a written request from the State ASC Committee, the County Office Manager of the Piatt County ASC Committee made a written report to the State ASC Committee that no 1955 wheat acreage allotment for any farm in Piatt County had been released to the Committee in 1954 for reapportionment to other farms in accordance with 7 C.F.R. 728.518(b).

"5. At a meeting of the Illinois State ASC Committee in Springfield, Illinois, on May 19 & 20, 1958, the State Committee determined as required by Amendment 1 to the 1959 Wheat Acreage Allotment regulations not to approve the use in Illinois of the 1957 or 1958 base acreage for wheat for any farm in the State of Illinois as the 1959 base acreage for the farm."

"Conclusions

"1. Applicant failed to comply with the requirements of the Agricultural Adjustment Act of 1938, as amended, and the regulations and instructions issued thereunder for the voluntary release and reapportionment of the 1955 wheat acreage allotment determined for applicant's farm in Piatt County, Illinois.

"2. The Piatt County ASC Committee was not authorized under the above law and regulations to use the 1957 or 1958 base acreage of wheat for applicant's farm as his 1959 base acreage and therefore were correct in not doing so.

"3. The Piatt County ASC Committee correctly applied the Agricultural Adjustment Act of 1938 and the regulations and instructions issued thereunder in establishing the 1959 wheat acreage allotment of 49.3 acres for applicant's farm."

Plaintiff now presents a bill in equity in accordance with 7 U.S.C.A. § 1365 to review the determination of the Review Committee. Title 7 U.S.C.A. § 1366 expressly states "the review by the court shall be limited to questions of law, and findings of fact by the review committee, if supported by evidence, shall be conclusive." Under 7 U.S.C.A. § 1367, any question of law may be raised, which would include the constitutionality of any act or regulation of the Secretary of Agriculture or of the State Committee acting for him. Donaldson v. United States, 6 Cir., 1958, 258 F.2d 591; Miller v. United States, 6 Cir., 1957, 242 F.2d 392, certiorari denied 355 U.S. 833, 78 S.Ct. 48, 2 L.Ed.2d 44;

Lee v. Roseberry, D.C.E.D.Ky.1950, 94 F.Supp. 324. But see Fulford v. Forman, 5 Cir., 1957, 245 F.2d 145.

2. "§ 728.917(a) Determination of base acreages for old farms. The county committee shall, in accordance with the regulations in this subpart, determine a base acreage for each old farm which will reflect the factors of past acreage of wheat, tillable acres, crop-rotation practices, type of soil and topography in arriving at the base acreage, consideration shall be given to the wheat history acreage on the farm during the years 1954 through 1957, tillable acres, type of soil, topography, the producer's crop-rotation system for the farm, including the equipment and other facilities available for carrying out such system of crop-rotation. Such base acreages shall be established as follows:

"(b) Historical average acreage. The county committee shall establish for each farm a historical average acreage which shall be the average of the wheat history acreages on the farm for 1954, 1955, 1956 and 1957. The wheat history acreages for 1954, 1955, and 1956 shall be as provided in §§ 728.811(n) and 728.816(b) of the 1958 wheat acreage allotment regulations issued by the Secretary (22 F.R. 2337). The wheat history acreage for any farm for 1957 shall be the base acreage determined for the farm under § 728.716 of the 1957 farm wheat acreage allotment regulations (21 F.R. 1895, 6056), except as hereinafter provided in this paragraph. If the 1957 farm acreage allotment was knowingly overplanted, the wheat history acreage for 1957 for the farm shall be the wheat acreage for the farm. If the 1957 farm wheat acreage allotment was underplanted in 1957 for the purpose of reducing the amount of wheat of a prior crop which had been previously stored to postpone or avoid payment of a marketing quota penalty incurred by overplanting, the farm wheat acreage allotment in any year prior to 1957, the wheat history acreage for 1957 for the farm shall be the acreage obtained by multiplying the wheat acreage, including the acreage diverted under the acreage reserve and conservation reserve programs, by a diversion credit factor. In such cases, the diversion credit factor will be the reciprocal of a decimal fraction which is 100 per centum of the county proration factor as determined under said regulations. The acreage diverted from the production of wheat under a 1957 acreage reserve agreement on any farm in 1957 shall be the smaller of (1) the wheat

Plaintiff asserts that State ASC Committee misconstrued regulation No. 728.917[2] by directing the County ASC Com-

acreage placed in the 1957 acreage reserve by agreement, or (2) the 1957 farm wheat acreage allotment minus the acreage actually devoted to wheat on the farm. The acreage diverted from the production of wheat under a conservation reserve contract on any farm in 1957 shall be the smallest of (i) the acreage designated under the conservation reserve contract as conservation reserve at the regular rate, or (ii) the reduction in soil bank base crops from the farm's soil bank base, or (iii) the amount by which the wheat acreage allotment for the farm exceeds the sum of (a) the acreage of wheat on the farm, (b) the acreage, if any, credited to wheat on the farm under the acreage reserve program, and (c) that part of the acreage by which the farm wheat acreage allotment was underplanted which was used to remove from storage wheat of a prior crop stored to avoid or postpone marketing quota penalties.

"(c) Adjusted acreage. (1) The county committee shall adjust the historical average acreage for any farm by eliminating from the period of years used in determining the historical average acreage the year or years for which it finds that the wheat history acreage was:

\* \* \* \* \*

"(iv) No longer representative because of a change in operations which results in a substantial change in the established crop-rotation system for the farm."

Amendment 1 as it appears in the Federal Register of May 22, 1958, (23 F.R. 3511) provides:

"(d) Use of 1957 or 1958 base acreage. With prior approval of the State committee, or on behalf of the State committee by the State administrative officer, program specialist, or farmer fieldman, the 1958 base acreage, or the 1957 base acreage if appropriate for 1959 due to the crop-rotation system established for the farm, determined for the farm under the regulations issued by the Secretary for establishing farm acreage allotments for the respective years (21 F.R. 1895; 22 F.R. 2337) may be used as the 1959 base acreage for the farm if the county committee, after consideration of the acreage(s) determined for the farm under paragraphs (b) and (c) of this section, determines that such use will result in a base acreage which meets the re-

mittee to determine marketing quotas for 1958 under § 728.917(b) when they reduced his base acreage.

The amended regulation (d) states expressly that it is to be applied by County Committees only where prior approval of the State Committee has been secured. The State Committee did not approve the use of the carry-over method for determining base acreages for the 1959 crop under § 728.917(d), but directed instead that equitable considerations required that the base acreages be established by use of the historical average method under § 728.917(b).

Section 728.917(b) of the regulations states that the County Committees shall establish for each farm an historical average which shall be the average of the wheat history acreages on the farm for the years 1954, 1955, 1956 and 1957, and that the wheat history acreage for 1955 shall be as provided in § 728.811(n) which recites: "'Wheat history acreage' * * * for * * * 1955 [shall be] the acreage determined for the farm as provided by §§ 728.716 * * *." Section 728.716 governs farm acreage allotments for 1957 and its provisions are in substance the same as § 728.917.

Plaintiff maintains that paragraph (a) of § 728.716 should have been applied by the County Committee in determining the wheat history acreage for the farm for 1955 crop rather than paragraph (b). He argues that for the year 1955, his base acreage was determined by the carry-over method set forth in paragraph (a), and that inasmuch as § 728.811(n) recites that his history acreage for the crop year 1955 shall be the "acreage *determined* for the farm as provided by §§ 728.716 * * *," that the acreage for that year should not now be redetermined by paragraph (b) which was not used in the 1954 determinations for the 1955 crop. (Emphasis supplied.)

quirements of paragraph (a) of this section.
*      *      *      *      *

Plaintiff's contention is clearly fallacious. Section 728.716 relates to acreage allotments for the 1957 crop year and was never used to determine allotments for plaintiff's farm for the 1955 crop. His 1955 crop allotment was determined under the regulations promulgated in 1954. The only part of § 728.716 which relates to acreage for the 1955 crop is paragraph (b) subsection 2 wherein it is provided that:

"The acreage for 1955 shall be the 1955 wheat acreage plus the acreage diverted under the 1955 wheat acreage allotment program * * *."

Obviously the reference is to wheat planted in 1954. Since no wheat was planted his historical acreage was 0 for the crop year 1955, and in computing his average wheat acreage for the years 1955, 1956, 1957, and 1958, the computation would be 0, 110, 110, and 110, or a total of 330 acres divided by four, giving 82 acres for the base acreage for 1959. This is assuming that plaintiff had not released his allotment for 1954 as provided by the amendment of August 28, 1954.

Plaintiff next contends that he avoided this consequence of his failure to plant wheat in 1954, by giving notice on October 15, 1954, to the office manager of the ASC County Office, of his decision to release his wheat allotment acreage for that year. The County Committee expressly found that no notice was received by October 1, 1954, as required by the State ASC Committee, of the relinquishment of plaintiff's 1955 marketing quota for reapportionment. Admittedly this finding is correct. However, plaintiff argues that since the Secretary of Agriculture did not publish regulation § 728.518(b) in the Federal Register until September 25, 1954, that regulation was not effective until 30 days after it was filed with the Director, Division of the Federal Register for publi-

"Issued at Washington, D. C., this 19th day of May, 1958."

cation. Accordingly, plaintiff asserts that the State Committee was not authorized to fix the closing date of October 1, 1954, and that his oral notice of October 15, 1954 was clearly adequate. Plaintiff overlooks the provisions of 5 U.S.C.A. § 1003 which states: "Except where notice or hearing is provided by statute this subsection shall not apply to interpretative rules, * * * or in any situation in which the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." Since the Secretary of Agriculture incorporated in the publication findings of good cause, as provided in 5 U.S.C.A. § 1003, the regulation was immediately effective. The reason for the immediate effectiveness of the regulation was stated, and it complied with the exception which made the regulation applicable without the 30-day effective date. Such procedure has been held valid. See Durkin v. Edward S. Wagner Co., D.C.E.D.N.Y.1953, 115 F. Supp. 118, affirmed Mitchell v. Edward S. Wagner Co., 2 Cir., 1954, 217 F.2d 303, certiorari denied 1955, 348 U.S. 964, 75 S.Ct. 524, 99 L.Ed. 752.

■■ Plaintiff next maintains that he did not have sufficient time by October 1, 1954 to take advantage of the amendment to 7 U.S.C.A. § 1334. However, plaintiff had notice [3] of § 1334 from its effective date, August 28, 1954, but plaintiff did not make up his mind to relinquish his wheat allotment until October 15, 1954. He also maintains that the State Committee in fixing October 1, 1954 as a closing date was arbitrary and capricious. There is a presumption of legality in the acts of federal officers. United States v. Chemical Foundation, 1926, 272 U.S. 1, 14 and 15, 47 S.Ct. 1, 71 L.Ed. 131. Plaintiff introduced no evidence to prove that the Secretary of Agriculture or the State Committee were arbitrary in their actions. This court cannot, without evidence, find that October 1, 1954 was not a reasonable closing date to relinquish wheat allotments to be utilized in the county or state by other farmers.

■ Next, the plaintiff contends that he had a vested right in the 110 base acreage allowed to him for 1955, and that the reduction to 82 acres in 1959 deprived him of this right without due process of law. (Fifth Amendment.) Regardless of the other questions here involved plaintiff could not have a vested right in his base acreage. The declared policy of the Act as set forth in 7 U.S. C.A. § 1282, in part, states:

"to regulate interstate and foreign commerce in * * * wheat * * * to the extent necessary to provide an orderly, adequate, and balanced flow of such commodities in interstate and foreign commerce through storage of reserve supplies, loans, marketing quota, assisting farmers to obtain, insofar as practicable, parity prices for such commodities and parity of income, and assisting consumers to obtain an adequate and steady supply of such commodities at fair prices."

To accomplish this purpose, Congress adopted the provisions of the Act providing for the amount of wheat that could be grown on the farm, 7 U.S.C.A. § 1335, and for referendum to the farmers on the adoption of the program. 7 U.S.C.A. § 1336. The purpose of the legislation was not only for the benefit of the farmers but also for the benefit of the public at large. If the plaintiff obtained a vested right in the amount of wheat he could plant in any one year the whole program would be unsuccessful in providing "an orderly, adequate, and balanced flow of such commodities in interstate * * * commerce." It is further to be observed that the Agriculture Adjustment Act is a public law and not a private law and that no vested right may be obtained

---

3. This was a public law of which all must take notice. Cooke v. United States, 1875, 91 U.S. 389, 23 L.Ed. 237, 244.

under a public law. See Superior Engraving Co. v. National Labor Relations Board, 7 Cir., 1950, 183 F.2d 783, 790, note 1; Hollingsworth v. Federal Mining & Smelting Co., D.C.N.D.Idaho 1947, 74 F.Supp. 1009. If the production of the wheat was to be controlled by the Act of Congress, plaintiff would be subject to any change which might be necessary to carry out the purpose of the Act. The regulations could not give rise to a contractual relationship. See F. H. A. v. The Darlington, Inc., 1958, 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132. Plaintiff has certainly received due process when his wheat allotment was determined by the County Committee and reviewed by the Review Committee, and is again being reviewed by this court under 7 U.S.C.A. § 1365.

Lastly plaintiff maintains that because he failed to plant wheat in 1954 and planted oats instead, and also because of his change in using a picker sheller to harvest his corn, that there was a substantial change in the crop rotation for the farm to bring him within regulation § 728.917(c) (iv).[4] Plaintiff's contention presented a material issue of fact and law. The Review Committee failed to make sufficient findings of fact and conclusion therefrom setting forth the reasons or basis therefor upon which this court can determine whether or not the Review Committee found there was a substantial change in the crop-rotation on the plaintiff's farm, and that the regulation was properly applied. The Administrative Procedure Act (§ 8(b)), 5 U.S.C.A. 1007(b) requires such action by the Review Committee. South Carolina Generating Co. v. Federal Power Comm., 4 Cir., 1957, 249 F.2d 755, certiorari denied 356 U.S. 912, 78 S.Ct. 668, 2 L.Ed.2d 585; Boudin v. Dulles, 1956, 98 U.S.App.D.C. 305, 235 F.2d 532. According to 728.917(c) (iv) the finding and conclusion should disclose whether or not there was "a change in operations which results in a substantial change in the established crop-rotation system for the farm." The court has already set forth these findings by the Review Committee on this point. Neither of these findings nor conclusions are sufficient for this court to determine whether the Review Committee properly applied the section involved.

The court, therefore, must remand the cause to the Review Committee for more full and complete findings of fact and conclusion on this point.

Findings of fact, conclusions of law and final order may be submitted in accordance with the views herein expressed.