536

**J. T. FULFORD**

v.

**Jesse V. B. FORMAN et al.**

Civ. A. No. 2052.

United States District Court
N. D. Texas, Lubbock Division.

July 27, 1956.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., and McMahon, Smart, Walter, Sprain & Wilson, Abilene, Tex., for plaintiff.

Heard L. Floore, U. S. Atty., and John A. Lowther, Asst. U. S. Atty., Fort Worth, Tex., for defendants.

DOOLEY, District Judge.

This suit is founded on the Agricultural Adjustment Act of 1938, as amended.[1]

---

1. 52 Stat. 31 et seq., 7 U.S.C.A. § 1281 et seq.

The plaintiff, a cotton farmer, of Terry County, Texas, sued the defendants, as members of the review committee appointed under said Act,[2] for the venue comprising said county, seeking judicial redress pursuant to law,[3] from a ruling that said committee had no jurisdiction of the complaint urged by the plaintiff against the cotton acreage allotment made by the county committee to the plaintiff for 1956.

The train of material circumstances began with the national marketing quota and the national acreage allotment for the cotton crop in 1956 proclaimed and determined by the Secretary of Agriculture pursuant to the said Act.[4] Out of said national allotment 7,410,893 acres was assigned to Texas. This was 2.65% less than the State allotment for 1955. Terry County was allocated 150,101 acres out of the State allotment. This was 7% less than the county's allocation of acreage in 1955. The State committee reserved 10% of said State allotment for use in making "adjustments in county allotments for trends in acreage, for counties adversely affected by abnormal conditions affecting plantings, or for small or new farms, or to correct inequities in farm allotments and to prevent hardship", as authorized by the Act.[5] The said State reserve was used in varying percentages for the purposes named in the law, except trend adjustments, and a part of said reserve was passed to Terry County. The particular division and distribution of said reserve made by direction of the State committee was a factor in numerous counties, mostly outside of West Texas, being allocated more cotton acreage in 1956 than in 1955. The plaintiff looked on this outcome as a hard inequity and discrimination against the farmers of Terry and other counties where the county acreage allotment was reduced in 1956.

The county committee apportioned to the plaintiff 157.9 acres of the Terry County allotment for 1956. He was dissatisfied and claimed that his part should have been 171.2 acres. The brunt of his criticism is that the State allotment was cut only 2.65%, while his own farm allocation was cut 7% in 1956. He found no fault, however, with the action of the county committee, and thought they had been fair and did the best they could under all of the circumstances, but pointed his grievance entirely against the State committee. The plaintiff's written statement of his complaint is quoted in the margin.[6] He contends that the review committee should have sat in judgment on the policy of the State committee in the distribution of the State acreage reserve for 1956, and in event of a finding that the action of the State committee reacted unfairly and inequitably against the plaintiff in his acreage quantum set by the county committee, this should have been corrected by the review committee assigning to the plaintiff a greater acreage figure than did the county committee. Of course, if such an upward adjustment was within the power of the review committee, then presumably most or all of the other farmers in the county would have been entitled to a similar upward adjustment.

2. 7 U.S.C.A. § 1363.

3. 7 U.S.C.A. § 1365.

4. 7 U.S.C.A. § 1342 and § 1344.

5. 7 U.S.C.A. § 1344(e).

6. "I am dissatisfied with and protest the cotton marketing quota given me for my farm because it is unfair and inequitable and discriminates against me in that other farms and other farmers comparable to me and to my farm and similarly situated in all essential respects have received substantially larger cotton marketing quotas than I have been given for my farm.

"This claimed inequity and discrimination does not result from the actions of the county committee nor are the cotton marketing quotas above set out unfair, inequitable, or discriminatory with reference to similar farms in Terry County but the matters complained of and the unfairness, inequity and discrimination claimed by the applicant are attributed to the establishment and allocation of the State acreage reserve."

The defendants filed a motion to dismiss, on the ground that, just as the review committee was without jurisdiction to encroach on the province of the State committee, this Court similarly has no authority for judicial review herein and should dismiss the proceedings for want of jurisdiction. The pursuit of that question first directs attention to the system of various committees used as aids in the administrative phase of both the Soil Conservation and Domestic Allotment Act of 1935, as amended,* and the Agricultural Adjustment Act of 1938, as amended. These two Acts are parts of a common program dealing with soil conservation and the orderly production and marketing of basic agricultural crops, under the direction of the Secretary. The said committee system originated in the earlier Act,[7] but was also adopted in the later Act,[8] and thus there came about a unified committee pattern. The Code provision, quoted in Footnote 7, expressly authorizing the Secretary to promulgate regulations bearing on the "exercise of the *functions* of the respective committees," specifically in context covered

the State committees and the county committees, and as a matter of functional consistency evidently became inclusive of review committees when same came on the scene a few years later. The authority of the Secretary to make pertinent regulations to guide the ramified administration of the Act in question is further fortified in general terms under other provisions of law.[9] Moreover, Reorganization Plan No. 2,[10] implementing the Reorganization Act of 1949,[11] as to the Department of Agriculture, provided that, with limited exceptions, "there are hereby transferred to the Secretary of Agriculture all functions not now vested in him of all other officers, and of all agencies and employees, of the Department of Agriculture", subject to power of delegation by the Secretary. This further emphasizes the clear fact that all of the committeemen serving in the administration of the Act in question act as agents and subordinates of the Secretary. The Agricultural Adjustment Act of 1938 made the first statutory provision for a review committee in language as quoted below.[12] The Section ushering

* 16 U.S.C.A. § 590a et seq.

7. 16 U.S.C.A. § 590h(b).
   " * * * In carrying out the provisions of this section in the continental United States, the Secretary is directed to utilize the services of local and State committees selected as hereinafter provided. The Secretary shall designate local administrative areas as units for administration of programs under this section. No such local area shall include more than one county or parts of different counties. Farmers within any such local administrative area, * * * shall elect annually * * * a local committee * * * for such area and * * * a delegate to a county convention for the election of a county committee. The delegates * * * shall, * * * elect, annually, the county committee for the county * * *. In each state there shall be a State committee for the State composed of * * * farmers who are legal residents of the State and who are appointed by the Secretary. * * * *The Secretary shall make such regulations as are necessary relating to the selection and exercise of the functions of the respective committees, and to the administration, through such com-*

*mittees, of such programs."* (Italics added.)

8. 7 U.S.C.A. § 1388(a).
   This section of the Agricultural Adjustment Act directs that in the administration thereof the "Secretary shall, for such purposes, utilize the same local, county, and State committees as are utilized under" those provisions of the Soil Conservation and Domestic Allotment Act quoted in the preceding footnote.

9. 7 U.S.C.A. § 1375(b) and 5 U.S.C.A. § 22.

10. 18 F.R. 3219, 67 Stat. 633, 5 U.S.C.A. following section 133z–15.

11. Act June 20, 1949, c. 226, 63 Stat. 203, 5 U.S.C.A. § 133z et seq.

12. Act of February 16, 1938, c. 30, Title III, § 363, 52 Stat. 63:
    "Any farmer who is dissatisfied with his farm marketing quota may, within fifteen days after mailing to him of notice as provided in section 362, have such quota reviewed by a local review committee composed of three farmers appointed by the Secretary. Such committee shall not include any member of the local committee which determined the farm acreage

in review committees has remained in force as so written in 1938, except for an amendment in 1951 specifying that the farmers of the committee be "from the same or nearby counties".[13]

The first regulations covering review proceedings under said Act were issued by the Secretary on July 13, 1938, and contained a provision of prominent importance to this litigation, and the text thereof is quoted in the footnote.[14] A slightly revised version of said regulation, as it still reads today, appeared in a revision of February 21, 1947, the only changes being the addition of a few words, and the text thereof, with the new words in italics, is quoted below.[15]

The plaintiff contends that the said regulation is invalid as an unauthorized restraint on the power of said review committee under the terms of the enabling statute,[16] and so far as research of counsel has disclosed this seems to be the first time that such regulation has ever been challenged in Court. That statute does not say, expressly or by implication, that a review committee shall have any criteria of decision radically different from that governing a county committee. Certainly a county committee has no authority to reexamine and reopen the distribution of a state acreage allotment to the respective counties or the designation and disposition of a state acreage reserve ordered by a state committee. A reference is again made to the source statute, partly quoted in Footnote 7 hereof, to recall that the statutory language directed the formation of county committees,

but delegated to the Secretary the authority to define the duties and functions of such committees, as well as state committees, by administrative regulations. One such regulation charges the county committees with the duty of determining the acreage allotments for the respective farms, and another regulation makes all determinations by said committees of acreage allotments subject to review and orders for revision by the State committee.[17] In other words, there is no doubt that county committees are strictly local units, and in general are subordinate to the State committee. The defendants, as committeemen, constitute in the statutory language "a *local* review committee", created to review farm marketing quotas and farm acreage allotments made by the county committees. Both types, then, are local committees by the plainest statutory language. The authority of both committees relates to the same subject matter and the difference between them is that one acts at the initial stage and the other at the review stage of determination. Obviously, there is a misfit in the process if initial decision is by one standard of authority and review decision is by another standard of authority, and it would be quite incompatible to say that the county committee had no power to determine a greater acreage allotment for plaintiff's farm, but that the review committee had the power, which the county committee lacked, to make such greater allotment of acreage for his farm, by way of neutralizing some detrimental consequences imputed to the man-

---

allotment, the normal yield, or the farm marketing quota for such farm. Unless application for review is made within such period, the original determination of the farm marketing quota shall be final."

13. Act April 12, 1951, c. 28, § 3, 65 Stat. 31, 7 U.S.C.A. § 1363.

14. 3 F.R. 1749, 1752.
    "The committee shall consider only such matters as, under the applicable provisions of the Act and regulations of the Secretary of Agriculture thereunder, are required to be considered by the county committee in the establishment of the quota sought to be reviewed."

15. 12 F.R. 1383, 1388.
    "*In all cases*, the *review* committee shall consider only such matters as, under the applicable provisions of the Act and regulations of the Secretary of Agriculture thereunder, are required *or permitted* to be considered by the county committee in the establishment of the quota sought to be reviewed."

16. 7 U.S.C.A. § 1363.

17. 20 F.R. 8247, Acreage Allotment Regulations for the 1956 Crop of Upland Cotton, § 722.717 and § 722.729.

**540**

agement of the State acreage reserve. In the interest of the simplest and speediest administration it ought to be possible for the plaintiff, or any other dissatisfied farmer, to get just as much relief from the county committee as he can from the review committee. Manifestly, the Secretary thinks that there should be a like scope of examination governing both a county committee and a review committee, which decide in sequence the same administrative question, namely, the determination of the marketing quota and acreage allotment for a given farm, and that policy is reflected in the contested regulation. The conclusion is reached that there is no inconsistency between such regulation and any part of the Act, and, on the contrary, there are reasons to be discussed next for the view that such regulation actually is in proper furtherance of the purposes and intent of the Act.

The record before the review committee shows there are other pending cases of this kind filed by numerous farmers in Terry and nearby counties and, apparently, this one is regarded as a test case. Counsel have said that the other like cases in the general South Plains territory number several hundred. Texas is said to have fifty review committees. This points up the gravity of the claim that said review committees have the authority claimed by the present plaintiff. The State committee is expected to take a statewide view of its administrative responsibilities, but the duties of the review committees have only a local perspective. One basic policy of the Act is to keep the acreage of cotton plantings within the determined bounds, in the Nation, the State and the county, and any overage deviation from the marketing quota or the acreage allotment for any particular farm is frowned on by strong penalties.[18] It is true the law provides that any increase of marketing quota by a review committee shall not affect the marketing quotas for other farms in the

county,[19] and in that way some deviation from the county allotment would result, if there was no residue of county reserve acreage to absorb such adjustment, but this provision had in view the typical course of the adjustments, one farm at a time, on the special factors of the particular farm, which normally would work only a minimal deviation from the county allotment, and certainly the law did not mean to pave the way for any such unprecedented proposal as that now before the Court. The position of this plaintiff stems not from anything identified specially with his farm as an individual unit, but from a complaint which does not stand on any distinction or comparable inequality between the ascertainment of his acreage allotment and that of any other farm in the county. If review committees all over the State should undertake to raise acreage allotments because of dissatisfaction with the reserve policies of the State committee, that course of conduct might well entail cotton plantings on many thousands of acres in excess of the State acreage allotment. Such an outcome, even in Texas alone, and more so if multiplied by the other cotton raising states, would surely tend to undermine the stability of the National Farm Program. This is enough to demonstrate that the contested regulation in question is geared with the law and makes for a workable, cohesive and well coordinated administration of the Act.

■ This case is within some well settled principles of administrative law. In the first place, the plaintiff on his claim that the regulation is invalid has the heavy burden to "make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress." Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 706, 44 L.Ed. 846; United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 61

18. 7 U.S.C.A. § 1348 and § 1346.

19. 7 U.S.C.A. § 1368.

L.Ed. 926; United States ex rel. Knauff v. Watkins, 2 Cir., 173 F.2d 599; Fussell v. United States, 5 Cir., 100 F.2d 995.

█ In the second place, this regulation followed shortly after the enactment of the Act in 1938, and since that time Congress amended the review committee section in 1951,[20] but at that time neither manifested any disapproval of said administrative rule, nor further defined the authority of such committees. The slight change made is explained in the opinion text herein related to Footnotes 12 and 13. The Courts hold that where statutory provisions have been reenacted without material change, any long standing administrative construction thereof is "deemed to have received congressional approval and have the effect of law." Helvering v. Winmill, 305 U.S. 79, 59 S. Ct. 45, 46, 83 L.Ed. 52; United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L.Ed. 893; Helvering v. Wilshire Oil Co., 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101; Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457.

█ In the next place, the foregoing rule is reinforced by the proposition that interpretations of an Act by those charged with its administration are entitled to persuasive weight, and with greater force when the construction has been adhered to for a long time and from the beginning of administration under the Act. Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917; United States v. American Trucking Ass'n, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L. Ed. 796; United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 53 S. Ct. 42, 77 L.Ed. 175.

█ It follows from what has been said herein that the Secretary had specific authority by statute for the adoption of said regulation, or, alternatively, his general authority to promulgate regulations fully sustained the adoption of this regulation as conducive to the execution of the intent and purposes of the Act,

or, in any event, if there is any possible doubt, the legal principles noted above resolve any question and sustain the validity of the regulation.

This suit, accordingly, is dismissed and counsel should submit such an order promptly.