**S. B. ALLEN et al., Appellants,**
**v.**
**W. Lewis DAVID et al., Appellees.**
**No. 20169.**

United States Court of Appeals
Fifth Circuit.
July 16, 1964.

Rehearing Denied Aug. 20, 1964.

---

Leon Jaworski, M. W. Parse, Jr., Houston, Tex., for appellants.

Woodrow Seals, U. S. Atty., William B. Butler, James R. Gough, Jack Shepherd, Asst. U. S. Attys., Houston, Tex., for appellees.

Before HUTCHESON, RIVES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

This is an appeal from the judgment of a district court [1] concluding that it lacked proper jurisdiction to adjudicate the question of whether the defendants' (appellees') actions concerning the cancellation of the plaintiffs' (appellants') farm acreage allotments and recall of their marketing quotas were within the authority granted them as functionaries of the Agricultural Stabilization and Conservation Service (ASCS) of the Department of Agriculture under the Agricultural Adjustment Act (Act) of 1938 as amended (Public Law 430, Seventy-Fifth Congress, 52 Stat. 31; 7 U.S.C.A. § 1281 et seq.), and regulations issued pursuant thereto under authority granted in Section 375 (7 U.S.C.A. § 1375) and 7 C.F.R. 730.1021(3), as amended. The district court consented to hear the case, which was filed as a class action pursuant to F.R.Civ.P. 23, and which sought injunctive relief. The complaint based jurisdiction on 28 U.S.C.A. §§ 1331, 1337. After the cause was heard, the district court duly entered its findings of fact and conclusions of law.[2]

---

1. United States District Court for the Southern District of Texas.

2. The conclusions of law are:

"I

"The actions found to have been taken by the County Committee and other officials and functionaries of the Department of Agriculture are within the authority granted to them by the Agricultural Adjustment Act of 1938 as amended (Public Law 430, Seventy-Fifth Congress, 52 Stat. 31; 7 U.S.C. § 1281) and regula-

tions issued pursuant thereto under authority granted in Section 375 (7 U.S.C. § 1375) thereof; and particularly the regulation 7 CFR 730.1021(3) as amended.

"II

"The revised Notices of Farm Allotment mailed to the Plaintiffs herein constituted notices of farm acreage allotment within the meaning of Section 362 of the Act (7 U.S.C. § 1362). Such notice is subject to review by a review committee pursuant to Section 363 of the Act and to further

'Briefly stated, the facts are these: The plaintiffs are Texas rice farmers whose 1962 farm acreage allotments and marketing quotas were cancelled by the defendants.[3] They attack this cancellation and assert that: (1) such act was wholly beyond the power of the defendants to effect; (2) that substantial unwarranted penalties were assessed against them as a result of said cancellation; and (3) that they were unable to market their crop for the year in question because of the unauthorized recall of their marketing quota cards.

■ Pursuant to the provisions of the Act, a functional scheme is provided commencing with the Secretary of Agriculture. The Secretary is required to determine a national acreage allotment for rice after determining the national marketing quota based upon the relationship between "total supply" of the commodity in question for the year and "normal supply", and to apportion the acreage allotment among the states. Apportionment of state acreage allotment among the counties is a function of the State Committee, subject to certain authorized reserves. The county allotment is apportioned by the County Committee pursuant to detailed regulations. The State Committee has certain supervisory powers over the County Committee. The County Review Committee is authorized to review the actions and decisions of the County Committee. Fulford v. Forman, 245 F.2d 145 (5 Cir. 1957).[4] The im-

review by a Court pursuant to Section 365 and 366 of the Act.

"III

"Such review must be sought by the producer as an individual, and an independent determination must be made of the legal validity of the actions challenged in each individual case. A class action does not lie.

"IV

"Since the remedy provided in Sections 361–368 of the Act, inclusive (7 U.S.C. Sec. 1361–1368 inc.), is applicable, it is by express provision of Section 367 of the Act, exclusive.

"V

"The plaintiffs having failed to pursue the remedy provided in the Act, this Court has no jurisdiction to grant the relief prayed in the present proceeding.

"VI

"For the reason that Section 367 of the Act expressly deprives this Court of jurisdiction to grant the relief prayed, it is unnecessary to pass upon the further jurisdictional questions raised by the defendants in their motion to dismiss pursuant to Rule 12(b) Federal Rules of Civil Procedure.

"VII

"No determination is made of the validity of the actions taken by the Department of Agriculture in the cases of the named Plaintiffs or of any in their class, for the reason that the merits of their claims are not before the Court.

"VIII

"The creditors of the Plaintiffs who have petitioned to intervene are not entitled to intervene as of right and, the Court having found that their interests are adequately represented by the present Plaintiffs, they should be denied leave to intervene.

"IX

"A decree should be entered denying the relief sought and dismissing this action."

3. The defendants are sued individually and as representatives of the class described. All defendants are employees of the Agricultural Stabilization and Conservation Service (ASCS), U.S. Department of Agriculture. One defendant is State Executive Director, several defendants constitute County Committees of individual counties of the state, and other defendants are County Office Managers.

4. As stated in Fulford, the function of the Review Committee may be described as follows:

"* * * Important as is their task, especially as it bears upon the economic survival of their neighbors, the legislative pattern shows that the function of the County Committee is fairly to distribute that which has been allocated to that county. But since the standards to be followed are invariably general, and many are so flexible that they would open up avenues for discrimination whether intentional, inadvertent, corrupt, or accidental, there was need for another agency, the County Review Committee, having local roots and hence local responsibility for the review of such actions. The system assures not only initial determination, but a complete review anew of the whole matter by neighbors who must live with their decisions. The statutory requirement, note 4, supra, that members of the Re-

portant and broad functions required of the Secretary to administer and enforce the law make it necessary that the Secretary prescribe such regulations as are authorized and needful to the enforcement of the statutory scheme.[5]

None of the plaintiffs planted acreage to rice in excess of their original acreage allotments and quotas as fixed by the County Committee initially. However, upon receipt of information by the ASCS to the effect that there was an indication that applicable regulations had been violated and improper practices might have been employed by some applicants with regard to obtaining their allotments, an audit of rice allotments was initiated. The practices referred to concerned whether certain rice producers who had certified to the ASCS that they were engaged in the production of rice were, in fact, so engaged.[6] Based on the auditors' reports as interpreted by the general counsel, the defendants, pursuant to 7 CFR 1021(e),[7] initiated the actions about which complaint is herein made.

view Committee must come from that or a nearby county and may not include a person who, as a county committee member, 'determined the farm acreage allotment, the normal yield, or the farm marketing quota for such farm' indicate quite positively that Congress meant to establish an initial and a reviewing agency of *local* people having *local* responsibility for decisions concerning *local* factors having a definitive *local* impact."

5. We only undertake to set forth a brief sketch of the organizational scheme involved. The Act and the complex regulations implementing it are well explained by the numerous cases which have dealt with the subject and which make specific reference to the various code sections and regulations involved. Except for the statutes and regulations set forth in this opinion and in the footnotes, we deem it unnecessary to quote and discuss at length all such statutory provisions and regulations, or the decisions construing them. See Fulford v. Forman, (U.S.D.C., N.D. Texas 1956) 144 F.Supp. 536; (5 Cir. 1957) 245 F.2d 145; Morrow v. Clayton, (10 Cir. 1963) 326 F.2d 36.

6. Under the Act, the County Committee must satisfy itself that the applicant for a farm acreage allotment will be "actively engaged in the production of rice." 7 CFR § 730.1021(d).
To be actively engaged in the production of rice, the applicant must meet the definition of the term "engaged in the production of rice" as set out in ¶ (g) of 7 CFR 1011. It provides:
" 'Engaged in the production of rice' means, for 1960 and subsequent crops, actively participating as a producer in the farming operations necessary to produce and harvest a crop of rice on a farm and the sharing in a predetermined and fixed portion of the rice crop, or the proceeds thereof, at the time of the harvest by virtue of furnishing as landowner or landlord the land on which the rice is being produced, or by furnishing as tenant or sharecropper the labor, water or equipment necessary to produce and harvest the crop. A producer furnishing land must establish to the satisfaction of the county committee that he will have control of such land throughout the crop year, either through ownership or a valid lease. A producer furnishing labor, water or equipment must establish to the satisfaction of the county committee that he will furnish the labor, water or equipment necessary to produce and harvest an acreage of rice planted on the farm by virtue of his producer allotment contribution to the farm acreage allotment. Furnishing labor, water or equipment for only a phase of production or harvest shall not be considered engaged in the production of the crop. Notwithstanding the above, any producer having control over land that meets the definition of developed rice lands, who requests the allocation of his producer allotment to a farm for the purpose of diverting an acreage from the production of rice under the conservation reserve program of the soil bank, shall be considered to be engaged in the production of rice. Any producer who the county committee finds, after allocation of the producer allotment to the farm, is not participating in the production of a crop of rice, shall not be deemed to be engaged in the production of rice on the farm in accordance with § 730.-1021(e)."

7. This section is as follows:
"(e) If the county or State committee has reason to believe, after the establishment of any farm acreage allotment in accordance with this section, that the tenant whose allotment acreage was allocated to such farm is not, or was

Certain creditors of the plaintiffs also petitioned the district court for leave to intervene. The district court found that the interests of these creditors were adequately represented by the plaintiffs and denied them leave to intervene. These creditors, now appellant-lien creditors, have assigned the district court's refusal to grant their petition as error, thereby also placing that issue before us.

The district court concluded that the plaintiffs had been properly notified of

> not, in fact actively participating in the production of the rice crop produced on the farm in such year, a hearing shall be scheduled by the county committee and the tenant shall be invited to be present, or to be represented, at which time he shall be given an opportunity to substantiate his claim that he is, or was, actively engaged in the production of rice on the farm as indicated at the time of filing his request for the allocation of his producer allotment to the farm. If the county committee, with State committee approval, or the State committee finds that such tenant is not, or was not, actively participating in the production of the rice crop on the farm, except where allocation was made for the purpose of participating in the conservation reserve program or for the preservation of acreage, and therefore did not actively engage in the production of rice on such farm during the year in question, the county committee shall, with the approval of the State committee, recall such producer's allotment acreage previously allocated to the farm and adjust the farm rice acreage allotment accordingly. The county committee shall notify the farm operator of the revised farm acreage allotment. Such notice shall be on an official Form MQ-24, and will be accompanied by a letter of explanation as to the reason such action was taken to reduce the farm acreage allotment. A copy of the notice and letter shall be forwarded to all persons engaged in the production of rice on the farm. Any allotment acreage recalled by the county committee under this section shall not be available for apportionment or reallocation to any other farm."

8. The State Committee informed the County Committtee in each case by means of the following memorandum:

the change in their farm acreage allotment within the meaning of the Act. 7 U.S.C.A. § 1362 (see f.n. 1). The State Committee notified the County Committee, and the County Committee notified the farmers.[8]

Actions by the County Committee are subject to administrative review by a Review Committee pursuant to Section 1363 of the Act, and to further review by either the United States District Court or any State Court of general jurisdiction.

"UNITED STATES GOVERNMENT MEMORANDUM

| To: | U. S. Department of |
|---|---|
| Office Manager | Agriculture |
| Jackson County | |
| ASCS | Texas ASCS State Office College Station Texas September 14, 1962 |

From:
W. Lewis David
State Executive
Director In Reply refer to:
 4-CHG

Subject:
Report of Audit No. TEX (63) SR-5; Items III A 7, 8.

Reference is made to the investigation report by the Internal Audit Division and the county committee hearing with respect to the rice farming operations of Allen Brothers, Louise Bonnot and Joe Bonnot.

This is to advise that, based on the evidence presented, the State Committee has determined that Louise Bonnot and Joe Bonnot were not actively engaged in the production of rice and the rice allotments of these producers should be recalled in accordance with Section 730.1021(e) of the regulations as set out in Rice Bulletin 1, Amendment 10.

The 1962 farm rice acreage allotment for farm G-71 shall be revised at this time to exclude the 13.3 acres contributed in the name of Louise Bonnot and the 10.3 acres contributed in the name of Joe Bonnot. Revised allotment notices shall be mailed to the interested producers with a letter of explanation. After this, you should proceed to determine the farm normal yield and the penalty for excess rice acreage in accordance with instructions. The producers should be notified of this penalty and be required to satisfy

7 U.S.C.A. §§ 1365, 1366.[9] The district court determined that the remedy provided by the foregoing sections was exclusive, and that, in view of 7 U.S.C.A. § 1367 [10] it was wholly without power to grant the relief prayed for inasmuch as

it by one of the methods provided for in the regulations."

Notice to the individual producer was as follows:

"Jackson County
September 18, 1962

Allen Brothers
Edna, Texas

Dear Mr. Allen:

This is to advise you that, based on the evidence presented, it has been determined that Louise Bonnot and Joe Bonnot were not actively engaged in the production of rice and the rice allotments of these producers are being recalled in accordance with Section 730.1021(e) of the regulations as set out in Rice Bulletin 1, Amendment 10. The 1962 farm rice acreage allotment for farm G–71 has been revised to exclude the 13.3 acres contributed in the name of Louise Bonnot and the 10.3 acres contributed in the name of Joe Bonnot. Enclosed is a revised allotment notice for Farm G–71.

If you have any questions, please contact the ASCS office.

Sincerely yours,
SAMUEL A. DODDS, JR.
Samuel A. Dodds, Jr.
County Office Manager
Jackson County ASCS
Box 430
Enc. Edna, Texas"

9. These sections are:

"§ 1365. Institution of proceeding for court review of committee findings

"If the farmer is dissatisfied with the determination of the review committee, he may, within fifteen days after a notice of such determination is mailed to him by registered mail or by certified mail, file a bill in equity against the review committee as defendant in the United States district court, or institute proceedings for review in any court of record of the State having general jurisdiction, sitting in the county or the district in which his farm is located, for the purpose of obtaining a review of such determination. Bond shall be given in an amount and with surety satisfactory to the court to secure the United States for the costs of the proceeding. The bill of complaint in such proceeding may be served by delivering a copy thereof to any one of the members of the review committee. Thereupon the review committee shall certify and file in the court a transcript of the record upon which the determination complained of was made, together with its findings of fact."

* * * * *

"§ 1366. Court review

"The review by the court shall be limited to questions of law, and the findings of fact by the review committee, if supported by evidence, shall be conclusive. If application is made to the court for leave to adduce additional evidence, and it is shown to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the hearing before the review committee, the court may direct such additional evidence to be taken before the review committee in such manner and upon such terms and conditions as to the court may seem proper. The review committee may modify its findings of fact or its determination by reason of the additional evidence so taken, and it shall file with the court such modified findings or determination, which findings of fact shall be conclusive. At the earliest convenient time, the court, in term time or vacation, shall hear and determine the case upon the original record of the hearing before the review committee, and upon such record as supplemented if supplemented, by further hearing before the review committee pursuant to direction of the court. The court shall affirm the review committee's determination, or modified determination, if the court determines that the same is in accordance with law. If the court determines that such determination or modified determination is not in accordance with law, the court shall remand the proceeding to the review committee with direction either to make such determination as the court shall determine to be in accordance with law or to take such further proceedings as, in the court's opinion, the law requires."

10. This section is as follows:

"§ 1367. Stay of proceedings and exclusive jurisdiction

"The commencement of judicial proceedings under this part shall not, unless specifically ordered by the court, operate as a stay of the review committee's determination. Notwithstanding any other provision of law, the jurisdiction conferred by this part to review the legal validity of a determination made by a review committee pursuant to this

the plaintiffs had failed to properly pursue the remedy provided for by the Act.[11]

The plaintiffs assign the holding of the district court as error with respect to its interpretation of the Act and the powers granted defendants thereunder; and further, in their reply brief, contend that basic federal jurisdiction is present and that the trial court erred in not ruling to this effect. We are thus presented with

> part shall be exclusive. No court of the United States or of any State shall have jurisdiction to pass upon the legal validity of any such determination except in a proceeding under this part."

11. Some point is made in briefs as to the time sequence involved with respect to the investigation and actions taken by the State and County Committees and the fact that suit was filed prior to receipt of notice by farmers of final action by the Committees. After the usual and prescribed routine of filing applications for producer allotments, the issuance of notices as to farm acreage allotment and marketing quota, and notice of acreage had been issued by the County Committee, an investigation into certain practices and conduct was initiated in June 1962. There were two investigations. One was conducted by the F.B.I., and the other by the Internal Audit Division of the Department of Agriculture. None of the named plaintiffs were involved in the F.B.I. investigation, which related more particularly to fictitious producer allotments, and the only way such investigation is related to these proceedings would be a rather remote connection under the contention of the plaintiffs that they are entitled to represent all rice farmers in a class action. The cases of the named plaintiffs were investigated by the Internal Audit Division, which investigated more particularly the question of whether the holders of producer allotments were actually engaged in "the production of rice" on the farms to which their allotments had been allocated.

Early in August 1962 an audit report was submitted which contained information indicating the possibility that some of the producers were not actually engaged in the production of rice. On August 9, the County Committee mailed notices to producers advising them of a hearing to be held before the County Committee on August 13, 1962, with reference to the subject matter, and advising the producer of his right to be present personally and by counsel. On August 10, 1962, the County Committee gave notice to

issues relating to a judicial interpretation of the Act as well as issues relating to the existence of federal jurisdiction under the Act. By approaching the matter of jurisdiction first, it is unnecessary for us to reach the problems concerning our interpretation of the Act and the validity of the defendants' actions. To put it another way, we agree with the findings of the district court regarding its lack of

producers that marketing cards theretofore issued were cancelled. A hearing was held before the County Committee on August 13, 1962. On September 14, 1962, a United States Government Memorandum from the State Executive Director of the State Committee, U. S. Department of Agriculture, was issued to the office manager of the County Committee that, based on the evidence presented, the State Committee had determined that certain of the producers were not actually engaged in "the production of rice" and the rice allotment of the producers should be recalled and revised allotment notices issued, and penalties invoked for excess acreage. Thereafter (September 17–18) the County Committee issued such notices.

The plaintiffs filed suit on September 7, 1962.

A number of forms are involved. No useful purpose would be served in undertaking to give the number, designation or general description of the various forms. It should be noted however that Form MQ–24–1 designated "Notice of Farm Acreage Allotment and Farm Marketing Quota" contained a notice on the front of the form calling attention to certain provisions on the reverse side, among which is the following:

> "1. REVISION OF ALLOTMENT. This allotment is subject to such changes as may be necessary under the procedure for determination of allotments for the designated crop year, taking into account (1) any incorrect data or information used in establishing this allotment or (2) any change in the total land in the farm for such year from that shown on the reverse."

Another form, No. 590, entitled "Notice of Acreage," issued by the County Committee, contains the following statement:

> "C. RICE—Unless the planted acreage is adjusted to the farm allotment in accordance with applicable regulations, a penalty will become due on the farm marketing excess, and rice produced on the farm will be ineligible for price support."

jurisdiction, and therefore it is not necessary to consider the issues presented which are not related to the matter of jurisdiction.

The specter of jurisdictional deficiency has haunted these proceedings throughout, and while the plaintiffs have attempted to steer a course through its murky waters, we are unable to follow their theories and contentions. Any constitutional questions concerning due process were laid to rest when the trial court, upon plaintiffs' own motion, ordered the "due process" allegation stricken from their complaint.

 There are no personal rights of property created in the plaintiffs by the Act which would allow them to recover in a suit against governmental functionaries. The Agricultural Act is a public law, not a private law; therefore no vested rights may be obtained under it. Dighton v. Coffman, 178 F.Supp. 114 (D.C.E.D.Ill.1959), aff'd 279 F.2d 497 (7 Cir. 1960); Bishop v. Review Committee, Venue V, Com. Stab. Serv., 298 F.2d 386 (8 Cir. 1962). The chief purpose of the Act is to control the production of certain agricultural products, including rice. 7 U.S.C.A. §§ 1282, 1304; Fulford v. Forman, 245 F.2d 145 (5 Cir. 1957); Wickard v. Filburn, 317 U.S. 111, 130, 63 S.Ct. 82, 87 L.Ed. 122, 138. Since the Act and its attendant regulations do not vest in the plaintiffs any legally recognizable rights other than those specifically enumerated therein; and since administrative avenues have been carefully laid out along which an aggrieved party may travel while seeking redress, we must reason that the plaintiffs choosing not to travel the road to administrative review as provided for them, have placed before the court a controversy over which we lack the power to render a binding decision under the facts and in the circumstances here involved.[12]

It may be that if the acts complained of are in fact, *ultra vires,* and beyond any powers granted to the defendants under the Act; then the plaintiffs are the victims of a simple action *ex delicto,* which may be maintained against the defendants individually much the same as against any other tort-feasor. Such a theory however, lends no support to the assertion of basic federal jurisdiction in this cause. See Goltra v. Weeks, 271 U.S. 536, 544, 46 S.Ct. 613, 616, 70 L.Ed. 1074, wherein the Court stated:

> "Neither they [government agents] nor the government which they represent could trespass upon the property of another, and it is well settled that they may be stayed in their unlawful proceeding by a court of competent jurisdiction, even though the United States for whom they profess to act *is not a party and can not be made one.* By reason of their illegality, their acts or threatened acts *are personal* and *derive no official justification* from their doing them in asserted agency for the government." (Emphasis added.)

 We do not take the position that either the Act or the regulations pursuant to the Act are simple. We regard them as complicated, lengthy and difficult. See Fulford v. Forman, 245 F.2d 145, 149. However, complexity and difficulty are not synonymous with arbitrariness, unreasonableness or invalidity. Review Committee Venue VII v. Wiley, 8 Cir., 275 F.2d 264, 272.

 The language of the Act imports to us that an exclusiveness of jurisdiction and review is lodged within the framework of the administrating agency. Weir v. United States, 310 F.2d 149, 156, 157 (8 Cir. 1962); Miller v. United States, 242 F.2d 392, 395 (6 Cir. 1957); Corbin v. United States, 279 F.2d 431, 432 (6 Cir.

---

12. After suit was filed, the State Committee determined that one of the plaintiffs was engaged in "the production of rice" and proper adjustment was made as to that plaintiff. Other rice farmers of the class which the plaintiffs seek to represent, and who were involved in substantially the same difficulties as the plaintiffs, followed the review procedures provided by the Act and the trial court found that their cases were being entertained and moved to decision.

1960); Corpstein v. United States, 262 F.2d 200, 201 (10 Cir. 1958), Cert. denied, 359 U.S. 966, 79 S.Ct. 877, 3 L.Ed.2d 834; Rigby v. Rasmussen, 275 F.2d 861, 865 (10 Cir. 1960); Donaldson v. United States, 264 F.2d 804, 805, 806 (6 Cir. 1959); United States v. Jeffcoat, 272 F.2d 266, 271 (4 Cir. 1959); United States v. Lillard, 143 F.Supp. 113, 119 (U.S.D.C.W.D.Mo., S.D., 1956); Paul v. United States, 222 F.Supp. 102, 106 (U.S.D.C.E.D. North Carolina, 1963); United States v. Bonderer, 139 F.Supp. 391, 395, 396 (U.S.D.C.W.D.Mo., W.D. 1956); United States v. Johnson, 155 F.Supp. 898, 901, 902 (U.S.D.C.W.D. Ark.1957).

The plaintiffs rely heavily on the case of Hasty v. Carter, (1961) 105 Ga.App. 139, 123 S.E.2d 563, and urgently insist that it constitutes judicial authority for their position and authorizes the relief sought. We do not so interpret the Hasty case. That case arose after review by the Review Committee and after the plaintiff had complied with the administrative remedies provided by the Act. There are also factual differences. In the instant case the plaintiffs had not marketed their crops when the defendants took action. In Hasty the tobacco had been marketed. The regulations applicable in Hasty are also different from those applicable here.

We are not unmindful of the recent case of Morrow v. Clayton, 326 F.2d 36 (10 Cir. 1963) which, in effect, finds the presence of federal jurisdiction over controversies arising out of an allotment of acreage and marketing quotas adverse to the farmer which was determined by a State Committee, but fails to locate such jurisdiction where the adverse decision was rendered by a local county committee.

■ The crucial question for our determination is whether the court has jurisdiction to review and revise the action of the County ASCS Committee; or, whether the plaintiffs must follow the administrative procedure of having their complaints first reviewed by the Review Committee. The plaintiffs contend that our case of Fulford v. Forman, 245 F.2d 145 (5 Cir. 1957), is authority for the proposition that they are not required to first present their complaints to the Review Committee. We do not so interpret Fulford. We were there considering the power of the Review Committee to review complaints of farmers who were protesting only the allotment of the entire state quota by the State Committee among the various counties of the state. We were not dealing with a complaint by a farmer protesting the action of the County Committee as to allotments made by such Committee to specific individuals or farms. This fact is made clear by the opinion of Judge Dooley when the case was before the District Court, 144 F. Supp. 536, where the court had occasion to say, in speaking of the farmer's contention: "He found no fault, however, with the action of the county committee, and thought they had been fair and did the best they could under all of the circumstances, but pointed his grievance entirely against the State committee." In affirming the action of the district court, our opinion in Fulford clearly rejected the contention there urged by the farmers that the language of Section 1363 is so broad that a Review Committee can review the action of the State Committee and even pass upon the actions of the Secretary himself. Concluding that such review was not authorized, this court ruled as follows:

"Since the statute itself does not accord to the Review Committee power to consider things beyond those matters relating to the use and distribution of the County Allotment as established by the State Committee, the regulation, Section 711.30 (b), 12 F.R. 1388, implements this approach and is obviously valid.

"This does not mean that the cotton farmers are necessarily without the means of judicial review for those acts by the State Committee, the Secretary, or his other agencies, deemed to be not in accordance with law. What those rights are, or where, or how they may be asserted is not before us. We merely hold

601

that the route through Sections 1363, 1365, 1366 is not the one."

We feel that Morrow supports Fulford and the conclusion here reached. In Morrow, the County Committee not only failed to act, but refused to act. Therefore, the court was not considering a complaint with respect to adverse action by the County Committee or whether such adverse action was reviewable by the Review Committee, as we are in the instant case. Indeed, Morrow concludes that district courts do not have jurisdiction of complaints by a farmer who has failed to exhaust his administrative remedies by proceeding under Section 1363 authorizing review by the County Review Committee; and further, that exhaustion of this administrative remedy is a prerequisite to court review. As indicated in Morrow there was no adverse action or decision by the County Committee or by the Review Committee so far as the complaining farmers were concerned. It was concluded, therefore, that since the County Review Committee was not authorized to review the actions of the State Committee or the actions of the Secretary himself, the complaining farmers in Morrow were not bound to exhaust the administrative remedies provided by Section 1363. That section is simply not applicable to actions by the State Committee. It is applicable to adverse decisions by the County Committee. In the case at bar we are asked in effect, to review adverse decisions by the County Committee, albeit that the primary cause for such actions and decisions by the County Committee were facts disclosed by the audit, and by State Committee action.

It is neither the function nor duty of this court to rewrite statutory enactments in order to create a remedy where none has previously been held to exist. We must remain attentive to the policies enumerated by the framers of the Act, Title 7, § 1282, 1304, U.S.C.A. As was carefully stated by this court in Fulford, supra:

"Of course, the heart of the Act is the elimination of excessive supplies of cotton [here rice] * * * through a detailed scheme for regulating production."

* * * * * *

"And control of ' * * * total supply, upon which the whole statutory plan is based, depends upon control of *individual supply.*' " (Emphasis supplied.) Citing Wickard v. Filburn, 317 U.S. 111, 130, 63 S.Ct. 82, 87 L.Ed. 122, 138.

In the light of the foregoing, we find it impossible to superimpose a tenuous distinction upon the Act which would thwart and undermine its expressed legislative scheme for the determination and control of *individual supply*. We conclude, therefore, there was no error in the district court's rulings regarding its lack of jurisdiction and its denial of the appellant-lien creditors' right to intervene.

Affirmed.