Warren L. MIGUEZ, Sr., Appellant,

v.

Laverne MIGUEZ, Appellee.

No. 7100.

Court of Civil Appeals of Texas, Beaumont.

April 16, 1970.

Motion for Rehearing Overruled May 7, 1970.

Foster C. Wilson, Longview, for appellant.

McCall & McCall, Hamshire, for appellee.

William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C., Alan S. Rosenthal, Atty., Department of Justice, Washington, D. C., Wear K. Schoonover and Paul H. Rapp, Attys., Department of Agriculture, Washington, D. C., amici curiae.

STEPHENSON, Justice.

This is an action brought by plaintiff, Laverne Miguez, for a divorce and a division of the community property. Defendant, Warren L. Miguez, Sr., filed an answer and cross action, also seeking a divorce. The court submitted issues to the jury as to the plaintiff's grounds for divorce which were answered favorably to plaintiff. The trial court then entered judgment granting plaintiff a divorce and dividing the community property. The par-

ties will be referred to here as they were in the trial court.

Defendant's primary contention on this appeal concerns that portion of the judgment dividing a rice acreage allotment, which reads as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that all of the rice acreage allotment and rice farming history heretofore entered on the records of the A.S.C. Office be and is hereby declared to be one-half (½) the separate property of Warren L. Miguez, Sr., and one-half (½) the separate property of Laverne Miguez, and the Jefferson County A.S.C. Committee is hereby authorized to make an adjustment on their records to the end that the rice acreage allotment standing in the name of Warren L. Miguez, Sr., and all the acreage history upon which it is based, be separated on said records so that the records will hereafter reflect that one-half (½) of said rice acreage allotment and the history upon which it is based will stand in the name of Warren L. Miguez, Sr., and one-half (½) in the name of Laverne Miguez.

\* \* \* \* \* \*

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the 1969 rice acreage allotment heretofore standing in the name of Warren L. Miguez, Sr., can only be allotted to land for the year 1969 by the joint action of Warren L. Miguez, Sr., and Laverne Miguez, or one-half (½) may be allotted by each of them."

Defendant contends the rice acreage allotment or history is neither separate nor community property and that the trial court had no authority to dispose of it, or enter any order in connection with it.

The record in this case shows plaintiff and defendant were married in November, 1942, and that this judgment was entered April 7, 1969. It is undisputed that defendant has been a rice producer in the State

of Texas for several years. In his sole name, he was assigned a producer rice allotment in the amount of 27.2 acres for the crop year 1958 under the Federal rice farm marketing quota and acreage allotment programs administered by the United States Department of Agriculture through the Agricultural Stabilization and Conservation Service pursuant to the Agricultural Adjustment Act of 1938, as amended (7 U.S.C. § 1301 et seq.). In 1963 and 1964, defendant acquired additional rice acreage allotment. For the year 1969, he was assigned a producer rice acreage allotment of 131.2 acres. During these years, plaintiff had no personal experience in producing rice, and had been employed as a secretary and bookkeeper.

Upon submission of this cause, it became apparent that the case involved the interpretation of an Act of Congress, supplemented by regulations issued by the Secretary of Agriculture, and departmental interpretations thereof. The Congressional Act and the regulations issued pursuant thereto must, of necessity, have uniform application throughout the nation. See Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed. 2d 180 (1962), reversing Bland v. Free, 162 Tex. 72, 344 S.W.2d 435 (1961). Consequently, we asked the Government of the United States to appear as amicus curiae so as to state the position of the Government and the Department of Agriculture with reference to the problem presented by this record. We have been favored with an excellent brief on behalf of the Government and have used a large portion thereof without direct attribution to the source.

The rice marketing quota and acreage allotment programs are formulated and carried out pursuant to the provisions of the Agricultural Adjustment Act of 1938, as amended (7 U.S.C. § 1301 et seq.). Farm acreage allotments also provide the basis for eligibility for price support under Title I of the Agricultural Act of 1949, as amended (7 U.S.C. § 1441 et seq.), but the provisions of that Act are not pertinent hereto. A national acreage allotment for rice is proclaimed each year unless dispensed with under Section 371 of the Act (national emergency or material increase in export demand) (7 U.S.C. §§ 1352, 1371). The national acreage allotment is the acreage of rice needed, together with carryover, to make available a supply of rice equal to the normal supply of rice (7 U.S.C. § 1352). This may vary from year to year, but cannot be less than the total acreage allotted in 1956 [7 U.S.C. § 1353(c) (6)]. The national acreage allotment is apportioned among states [7 U.S.C. § 1353(a)], and the state allotment is apportioned among producers in the state [7 U.S.C. § 1353(b)].[1] The bulk of the state allotment goes to producers who have had prior rice-producing experience, but a small acreage may be made available to producers without prior experience [7 U.S.C. § 1353(b)]. If it is determined in any year that the total supply will exceed the normal supply of rice, the Secretary is required to proclaim marketing quotas on the next crop of rice [7 U.S.C. § 1354(a)]. Marketing quotas become effective only if approved by a two-thirds favorable vote of rice producers voting in a national referendum [7 U.S.C. § 1354(b)]. Both marking quotas and acreage allotments have been in effect on the 1955 and each succeeding crop and will be in effect on the 1970 crop. In order to determine compliance under the marketing quota and acreage allotment programs, the producer allotment must be allocated each year to the farm or farms in the state upon which the rice will be produced. The total

---

[1]. If it is recommended by the ASC State Committee and approved by the Secretary of Agriculture, a state may be designated as a "Farm State," in which case the state allotment is apportioned to counties within the state and the county allotment is apportioned to farms within the county.

A state may be divided into two areas, one "producer" and one "farm". Louisiana is so divided [7 U.S.C. § 1353(b)]. Among major rice-producing states, Texas and California are "Producer States"; Arkansas and Mississippi are "Farm States".

acreage of all producer allotments allocated to a farm for any year becomes the farm acreage allotment for that year (7 CFR §§ 730.72, 730.73).

The Act and regulations make express provision for the transfer of producer allotments from one producer to another [7 U.S.C. § 1353(f); 7 CFR § 730.76]. The provisions of the Act are as follows:

"(f) (1) If a producer in a State in which farm rice acreage allotments are determined on the basis of past production of rice by the producer on the farm, dies, his history of rice production shall be apportioned in whole or in part among his heirs or devisees according to the extent to which they may continue or have continued, his farming operations, if satisfactory proof of such succession of farming operations is furnished the Secretary.

"(2) If a producer in a State in which farm rice acreage allotments are determined on the basis of past production of rice by the producer on the farm withdraws in whole or in part from rice production in favor of a member or members of his family who will succeed to his farming operations that portion of his rice history acreage as may be ascribed to such withdrawal may be transferred to such family member or members, as the case may be, if satisfactory proof of such relationship and succession of farming operations by such family member or members is furnished the Secretary.

"(3) If a producer in a State in which farm rice acreage allotments are determined on the basis of past production of rice by the producer on the farm permanently withdraws from rice production, his rice history acreage may be transferred to another producer or producers who have had previous rice-producing experience, provided the following conditions are met: (i) The transferee must acquire, except for land, the entire farming operation pertaining to rice, including all production and harvesting equip-

ment, any irrigation equipment not permanently attached to the land; and (ii) the transferee must actually plant at least 90 per centum of his total producer rice acreage allotment, including the allotment determined on the basis of the rice history acreage acquired from the transferor for at least three out of the next four years following the transfer. Failure by the transferee to comply with condition (ii) above shall result in cancellation of the transfer of the rice history acreage. The transferor of rice acreage history under this subsection shall not be eligible for a producer rice acreage allotment for any year subsequent to such transfer, except to the extent that such allotment may be based on rice history acquired in a year (subsequent to the transfer) for which rice acreage allotments are not in effect.

"(4) Upon dissolution of a partnership in a State in which farm rice acreage allotments are determined on the basis of past production of rice by the producer on the farm, the partnership's history of rice production shall be divided among the partners in such proportion as agreed upon in writing by the partners: *Provided,* That if a partnership was formed in a year in which allotments were in effect and is dissolved in less than three consecutive crop years after the partnership became effective, the rice acreage allotment established for the partnership and rice history acreages credited to the partnership for each of the years during its existence shall be divided among the partners in the same proportion that each partner contributed to the allotment established for the partnership at the time such partnership was formed. The rice history acreage credited to each of the partners for the years prior to the time the partnership was formed shall revert to the person to whom it was originally credited." [7 U.S.C. § 1353(f)]

█ There is no other provision of *law* for the transfer of rice allotments in producer states except the release and reappor-

tionment of rice allotments under Section 353(e) of the Act [7 U.S.C. § 1353(e)], which is not relevant hereto. The transfers authorized under paragraph (1) of Section 353(f) of the Act apply only in cases where a producer dies; those under paragraph (3) apply only where the producer-transferor withdraws permanently from the production of rice and the producer-transferee has had previous rice-producing experience; and those under paragraph (4) apply only to partnerships. The Secretary of Agriculture has not treated a husband and wife in a community property state as a partnership, and we have concluded that this court should not do so.

Under Spanish Civil Law, marriage was regarded as a species of partnership, but the State of Texas, upon adopting the Common Law in 1840, expressly indicated the rights in property of married persons were not to be governed by the Common Law, but were, instead, to be controlled by statute. 30 Tex. Jur.2d § 52, p. 89. The courts in this state have uniformly held that a partnership in this state must be founded on a voluntary agreement and is to be controlled by the intent of the parties. Lovell v. Lovell, 202 S.W.2d 291 (San Antonio Tex.Civ.App., 1947, no writ). Article 6132b, Section 6(1) of the Texas Uniform Partnership Act, Vernon's Ann.Civ.St., specifically provides:

"A partnership is an association of two or more persons to carry on as co-owners a business for profit."

Therefore, a transfer of an interest in the defendant's rice acreage allotment, to be effective would have to be authorized by paragraph (2) above.

In essence, paragraph (2) of the Act authorizes the transfer of rice allotment from a producer who withdraws in whole or in part from rice production in favor of a member or members of his family who will succeed to his farming operations. The Act does not define "member or members of his family," but the regulations issued pursuant thereto define member of the family to include "spouse, father, mother, brother, sister, son, daughter, brother-in-law, son-in-law, grandson, granddaughter, nephew, niece, or other relative who would be entitled to succeed to the transferor's estate upon death, intestate, according to the laws of the State in which the transferor resides." [7 CFR § 730.76(b) (2)].[2]

Whether a divorced wife is a spouse, as defined by the regulations, where the proposed transfer and the divorce occur at the same time, is apparently a question of first impression. We now hold that at the time a divorce is being granted, and the community property is being divided, a husband can transfer to his wife, all or a portion of his producer rice allotment, providing the applicable regulations are met. Under such regulations, a transfer of producer rice allotment from a husband to his divorced wife in connection with the granting of the divorce can be

2. "§ 730.76(b)  *  *  *
"(2) If a producer withdraws in whole or in part from the production of rice in favor of a member or members of his family who will succeed to his farming operations, that portion of his current allotment and related rice history acreage during the applicable base period as may be ascribed to such withdrawal, may be transferred to such family member or members. For the purpose of this sub-paragraph (2), a member of the transferor's family shall be limited to the transferor's spouse, father, mother, brother, sister, son, daughter, brother-in-law, son-in-law, grandson, granddaughter, nephew, niece, or any other

relative who would be entitled to succeed to the transferor's estate upon death, intestate, according to the laws of the State in which the transferor resides. The transferor shall furnish the county committee in writing at the earliest practicable date, the names and addresses of the transferees, their relationship to him and the extent to which he is to be succeeded in his farming operations by them. The current allotment and related rice history acreages credited to the transferor during the applicable base period shall be divided among the transferor, when applicable, and the transferees in accordance with the transferor's request."

effectuated only by application in writing by the husband to the County Agricultural Stabilization and Conservation Committee, the furnishing of certain information to such committee, and approval by the committee and a representative of the ASC State Committee. [7 CFR § 730.76(a)].[3]

The apportionment of a rice acreage allotment to a producer or a farm involves the regulation of the marketing of rice in interstate and foreign commerce pursuant to the Agricultural Adjustment Act of 1938, as amended (7 U.S.C. § 1301 et seq.). The size of the allotment may vary from year to year in accordance with the provisions of the Act. The size of the allotment may also be affected by amendments to or repeal of the legislation. Moreover, if not approved by a two-thirds favorable vote of rice producers voting in a national referendum, marketing quotas on rice for a particular year's crop become ineffective. Thus, producer and farm acreage allotments are not vested property rights.

As stated by the Supreme Court of Georgia in Balkcom v. Cross, 216 Ga. 530, 118 S.E.2d 185, 187 (1961):

"The very nature of an acreage allotment of the enumerated crops is such that it has no existence except for one specific year * * * and the idea that the farmers and landowners participating in the program acquired by such participation any vested right in the ordinary sense to the allotments themselves, or to have the rules and regulations remain static or to be continued beyond the year for which promulgated, is clearly contrary to and destructive of the Act and its workings."

In Dighton v. Coffman, 178 F.Supp. 114, 122 (U.S.D.C., E.D.Ill., 1959), the court stated:

"The purpose of the legislation [Agricultural Adjustment Act of 1938] was not only for the benefit of the farmers but also for the benefit of the public at large. If the plaintiff obtained a vested right in the amount of wheat he could plant in any one year the whole program would be unsuccessful in providing 'an orderly, adequate, and balanced flow of such commodities in interstate * * * commerce.' It is further to be observed that the Agricultural Adjustment Act is a public law and not a private law and that no vested right may be obtained under a public law."

In Allen v. David, 334 F.2d 592, 599 (5th Cir., 1964), a case involving producer rice acreage allotments in the State of Texas, the court stated:

"There are no personal rights of property created in the plaintiffs by the Act which would allow them to recover in a suit against governmental functionaries. The Agricultural Act is a public law, not a private law; therefore no vested rights may be obtained under it."

In Pelton v. First National Bank of Angleton, 400 S.W.2d 398, 400 (Houston Tex. Civ.App., 1966, no writ), it was held that the creditor bank did not have such an interest in the debtor's producer rice allotment as would authorize the appointment

3. "§ 730.76(a) * * *
"(2) Each such transfer under this section shall be contingent upon furnishing in writing on or before April 1 of the current year all pertinent information requested by the county committee. Each such transfer will be subject to the approval of the county committee and a representative of the State committee. The transferor's signature date shown on the notice of withdrawal shall be the effective date of the transfer: *Provided,* That the county committee and a representative of the State committee find that the conditions applicable to the transfer of allotment under this section have been met. If it is found that any of the required conditions has not been met, the notice of withdrawal shall be canceled and the interested producers shall be so notified in writing showing reasons for cancellation of the transfer of allotment."

of a receiver to administer such rice allotment. In reversing the lower court which found that the allotment and acreage history constituted property subject to receivership, it stated:

"There is no evidence that the bank has in any fashion acquired an ownership in any degree in the allotment, if, indeed, this is possible under the rules and regulations of the Agriculture Department."

In Haas v. Earley, 443 S.W.2d 861, 863 (Corpus Christi Tex.Civ.App., 1969, no writ), the court construed a farm lease as it affected the landlord's rights to transfer an upland cotton farm acreage allotment from the farm pursuant to 7 U.S.C. § 1344b and regulations of the Department thereunder. The court considered the transferable farm cotton allotment to be "a new and valuable type of intangible property."

■ Producer rice acreage allotments are used in the administration of the Federal marketing quota and acreage allotment programs. They vary in amount from year to year in order that the Congressional intent to regulate interstate commerce in rice may be carried out. They are subject to further change or may become inoperative through amendatory or repeal legislation by the Congress, and they may become inoperative for a particular year or years by the action of rice producers voting in a national referendum in failing to approve their use by a two-thirds favorable vote. They are therefore not vested property rights, but they have some attributes of intangible personal property. The assignment of producer allotments to individual producers is a yearly function of the ASC County Committee in the administration of a Federal program. Transfers of such allotments from one producer to another are governed by Federal statutes and regulations issued by the United States Department of Agriculture, not by state law.

■ The defendant's point of error complaining of the action of the trial court independently making a division of the producer allotment, is sustained. There being no compliance with the regulations as above set forth beginning with a written application by defendant, the trial court had no authority to make such division.

On a retrial of the case, there is an adequate remedy at law to protect plaintiff. Although rice acreage allotments are not vested property rights, there is no doubt that the right to such allotment is a valuable right. The record shows the producer rice allotment in issue was acquired during this marriage, and is the most valuable asset involved. If a husband could invest all the community funds in a producer rice allotment and then refuse to sell or transfer any part in order to make settlement in a divorce suit, this would result in a manifestly unjust situation for the wife. In the event defendant refuses to make such application, the trial court has the authority to enter an order to compel him to do so.[4] Ex parte Preston, 162 Tex. 379, 347 S.W. 2d 938 (1961); Ex parte Ramzy, 424 S.W. 2d 220 (Tex.Sup., 1968).

■ Defendant has a point of error complaining of the action of the trial court in refusing to submit to the jury, unconditionally, his issue as to whether or not plaintiff had been guilty of cruel treatment. The first issue submitted in this case inquired whether or not defendant was guilty of cruel treatment. The court then prefaced the second issue as to cruel treatment by plaintiff, with the instruction

4. *Amici* say: " * * * we make no suggestion as to whether a State court of Texas can force a husband in a divorce action to take action under Federal statutes and regulations to effect such a transfer, *but the county committee will accept and approve the application of a husband to transfer all or a part of his producer rice allotment to his divorced wife in connection with the divorce proceedings,* provided all requirements of the statutes and regulations are met; * *."  (Emphasis supplied.)

that it should be answered only in the event the jury answered "We Do Not" to the first issue. Inasmuch as the jury answered "We Do" to the first issue, the second issue was not answered. Texas Rules of Civil Procedure, rule 279 requires a trial court to submit to the jury controlling issues of fact raised by the pleadings and the evidence. Upon a new trial of this case, we feel sure the trial court will follow this rule and unconditionally submit to the jury for both plaintiff and defendant, the ultimate issues raised by the pleadings and the evidence.

We find the other points of error to be without merit and they are overruled.

Reversed and remanded.