**T. J. BABB, Independent Executor Under the Will of Elizabeth Babb, Deceased**

v.

**UNITED STATES of America.**

**Civ. A. No. 71–V–5.**

United States District Court,
S. D. Texas,
Victoria Division.

June 20, 1972.

Richard Henderson, Guittard, Henderson, Jones & Lewis, Victoria, Tex., for plaintiff.

Michael D. Cropper, Tax Division, Department of Justice, Dallas, Tex., for defendant.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

This is a suit for refund of federal estate taxes in the amount of $27,604.07, plus interest. The facts before this Court are by stipulation. T. J. Babb and Elizabeth L. Babb were married February 27, 1932, and this marital relationship existed until her death on October 6, 1966. During this entire period, Mr. and Mrs. Babb resided in Jackson County, Texas. There, T. J. Babb engaged in the business of ranching and farming, with a primary emphasis on rice farming.

The facts before this Court reflect that T. J. Babb had rice allotments from 1958 through 1968, ranging from 591.0 to 1088.1 acres, and that on February 18, 1966, a producer-rice allotment of 1088.1 acres for the 1966 crop year was determined for him. As provided by law and regulation, T. J. Babb allocated his 1966 producer-rice allotment to farms on which he would be engaged in the production of rice for that particular year. He harvested a rice crop from those farms, but no producer-rice allotment for the 1967 crop year had yet been determined for him prior to the death of Mrs. Babb.

A federal estate tax return was filed on behalf of the Estate of Elizabeth L. Babb, Deceased. Upon audit thereof, the Commissioner of Internal Revenue adjusted the gross estate to include therein what it alleged to be additional property consisting of one-half of the value of the producer-rice 1088.1 acre allotment carried on the United States Department of Agriculture records in the name of T. J. Babb.

The Plaintiff has contended all along that his producer-rice allotment for the crop year 1966 was not property, and one-half of the value thereof should not have been included as an asset in the estate of his deceased wife, but he paid the additional tax anyway and then made a claim for refund of the estate taxes which were attributable to the inclusion of such asset in the estate. The claim was disallowed.

■ The Plaintiff then instituted this suit. Jurisdiction pursuant to 28 U.S.C. § 1346(a)(1), is proper in this Court; similarly, venue is proper, pursuant to 28 U.S.C. § 1402. For the purpose of this suit, it is stipulated by the parties herein that, if one-half of said producer-rice allotment is properly included in the gross estate of Mrs. Babb, then the value of $150.00 per acre placed on the allotment is the correct valuation.

The law covering rice allotments is a part of the Agricultural Adjustment Act, 7 U.S.C., §§ 1351–1357. The Secretary of Agriculture is authorized to fix a national acreage allotment for each calendar year, and he is required to do this prior to December 31 of the year before. There is then held a national referendum among rice producers, and, if the national acreage allotment is passed by a two-thirds majority, the national allotment, which exists only by such action, is apportioned to the several states by the Secretary; the state allotment for Texas is then apportioned to the counties by the state A.S.C. Committee, and the county committee apportions such allotment to the individual producers. At all times pertinent to this action, the State of Texas has been designate a "producer" state, wherein rice allotments are determined for an individual producer rather than a particular farm.

■ In order to determine the validity of including one-half the value of said producer-rice 1088.1 acre allotment in Elizabeth Babb's estate, we must consider several issues. First, was Elizabeth Babb, during her lifetime, qualified, under such Federal act, to hold all or any part of a rice allotment in Texas? Although rice farming was a community operation, no producer-rice allotments had ever been established for, or made in her name. She had no Social Securi-

ty number and was listed on her estate tax return as a housewife. Certainly, she had a very definite community interest in the rice crop and the proceeds thereof, but T. J. Babb was the rice grower and the rice-growing history and allotments made pursuant thereto were credited to him on the records of the United States Department of Agriculture. Had he wanted to withdraw under Section 1353(f)(2), "in favor of a member or members of his family," that is, in favor of his wife, proof to the Secretary of the relationship and the succession of farming operations would have been required. There is no evidence that Mrs. Babb ever actively participated in the rice-growing operations or that a withdrawal in her favor would have satisfied the Secretary. The only way she could have been considered as a producer and thus entitled to all or any part of a producer-rice allotment under the Act would have been solely by virtue of the community property laws of the State of Texas. This would not have been enough. There is just no way to expand the status of Mrs. Babb just prior to her death so that she would have been, merely by the application of the community property law in Texas, entitled to a producer-rice allotment under any of the provisions of said Agricultural Adjustment Act.

■ If, immediately prior to her death, Mrs. Babb did not qualify as a producer and was not entitled to a rice-producer allotment or a part of it under the Act, then this Court concludes she had no interest of any kind in the 1966 rice allotment established for her husband at the time of her death, and no part of the allotment should have been included in her estate. But, as to the next issue, assuming Mrs. Babb was so qualified under the Act, what would she have owned at her death? The stipulation does not specifically state the date of harvesting of T. J. Babb's 1966 rice crop, but the inference is that it was harvested prior to his wife's death, and it may very well be that a judge in the Southern District of Texas can take judicial notice that, in the absence of unusual circumstances, and even if two crops were planted, the harvest would have been substantially completed in early October. In any event, the allotment for 1966 was largely used up when it was allocated to the farms on which he produced his rice crop, and this certainly occurred before Mrs. Babb died. Even if the 1966 rice allotment, at the time it was first determined, happened to be a valuable item of intangible property, it had practically no value at Mrs. Babb's death. Thus, the Internal Revenue Service, without justification, placed a value upon a rice-producer allotment that was exhausted.

Since the 1966 allotment was used up prior to Mrs. Babb's death, there was nothing left but a history of rice growing over preceding years, which would become important only if, following the procedures required, allotments were to be established for the next year. There is no marrow to such a history. Any substance it might have remained as a part of T. J. Babb's records with the Department of Agriculture. No transfer of such history occurred because of Elizabeth Babb's death, and it was not property to be included in her estate.

Regardless of the merit of our conclusions just explained, the ultimate issue is whether, under the Agricultural Adjustment Act, and the governmental regulations hereafter quoted, the 1966 rice-producer allotment, and the rice-growing history established by T. J. Babb over the preceding years, was property in which Mrs. Babb held a community interest.

■ In approaching this issue, since Plaintiff here seeks a refund of federal estate taxes paid, we ought to look at what happened in the light of federal estate taxes. To begin with, the federal estate tax is not a tax on the property the beneficiary receives. Rather, it is a tax imposed upon the transfer of property by reason of death, and is measured by what the decedent relinquished or transferred in possession or enjoyment as of the date of death, and

not according to subsequent events. The termination of the power of disposition by decedent at death which operates as an effective transfer is involved. Property interests terminating on or before death are not proper subjects of the federal estate tax. Goodman v. Granger, 243 F.2d 264, 268, 269 (3 Cir., 1957).

Since federal estate taxes are assessed on the transfer of property as of the date of death and not according to subsequent events, an inspection of Section 1353(f)(1) of Title 7, United States Code, will be enlightening. Such section is concerned with the death of the rice producer, and provides, in part, that if a producer whose rice acreage allotments are determined on the basis of past production of rice dies, "his history of rice production shall be apportioned, in whole or in part, among his heirs or devisees, according to the extent to which they may continue, or have continued, his farming operations," but only when satisfactory proof of the succession of farming operations is furnished the Secretary. This provision is concerned only with decedent's "history of rice production" and that is all. The clause "shall be apportioned" implies something other than death must happen. It certainly negatives the idea that, at the instant of Mrs. Babb's death, a transfer of an undivided interest in a history of rice production occurred. It seems clear that any transfer could only be accomplished by subsequent events, and with limitations as to whom the transferee might be.

In addition to the foregoing statutory provisions, the Department of Agriculture has promulgated regulations detailing the procedure for the allocation and transfer of producer-rice allotments. Under Section 730.76 thereof, it is provided that, "If a *producer dies* or withdraws from the production of rice, his allotment and related history acreages during the applicable base period *may be* transferred * * *" (emphasis supplied) to someone else; and, this provision does not even imply that title passes by reason of death, but, on the con-

trary, the language "may be transferred" strongly indicates it could not pass until after death. Under regulation 730.76(b), any transfer is further limited by language that the "current allotment and related rice history acreage during the applicable base period shall be apportioned, in whole or in part, *among his heirs or devisees,* according to the extent to which they may continue or have *continued his farming operations,*" (emphasis supplied) and, further, that "the rice history credited to the decedent during the applicable base period shall be divided among the *heirs or devisees* in the same proportion that the allotment is divided." (Emphasis supplied.)

There is no doubt of Elizabeth Babb's property interest in any community land on which rice was grown, in the crops until harvest, and the proceeds thereof. Such tangible items existing at her death passed by her will, and, if she had died intestate, would have passed by the laws of descent and distribution. But, in light of the above quoted section of the Act and pursuant regulations, said allotment and history would not have, automatically and without the happening of subsequent events, gone any place by reason of Mrs. Babb's death. No transfer would have occurred. The allotment, if not already expired, would have soon disappeared into the nebulous area from whence the largess originally came. Even assuming the 1966 allotment had just been established and had not yet been apportioned to the land and no rice crop planted, no alteration in T. J. Babb's usage would have occurred at Mrs. Babb's death. Regardless of the terms of her will, or what would have happened to her property under the laws of descent and distribution, Mr. Babb could have proceeded with the apportionment, planted the crop and harvested it, without obtaining any assignment from Mrs. Babb's executor or action on the part of the Secretary of Agriculture. There was no valuable right or interest owned by Mrs. Babb in such allotment and history at

her death. If there had been some indistinct interest, it would have most certainly terminated at her death and disappeared.

There are no cases directly in point, but we have been cited cases as to comparable situations. The Texas case of Miguez v. Miguez, Tex.Civ.App., 453 S.W.2d 514 (1970) (no writ), is persuasive in holding that the trial court, in disposing of community property in a divorce suit, had no authority to transfer a rice allotment, or any part of it, to the wife being divorced. It was held in McClung v. Thompson, 401 F.2d 253 (8 Cir., 1968), that a rice allotment is not a vested right and the rice grower did not have sufficient unregulated control over his rice allotment to be able to transfer or convert it to his own use. The Fifth Circuit, while not deciding the issue here before us, in Allen v. David, 334 F.2d 592 (5 Cir., 1964), explained that the Agricultural Act is "a public law, not a private law; therefore no vested rights may be obtained under it" and then it required aggrieved farmers to exhaust administrative remedies.

The similarity in the structure of Social Security benefits and certain recovery under the Fair Labor Standards Act make the cases of Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435; Charleston National Bank v. United States, 221 F.Supp. 271 (D.C. 1947); Ackerman v. J. I. Case Co., 74 F.Supp. 639 (D.C.1947); convincing with regard to the lack of vested or contractual rights in the rice allotment program. Any benefits which the employer, or the government, can withdraw are gratuities, and the recipient has no vested interest or contractual rights therein.

It is the conclusion of this Court that Elizabeth Babb owned no vested, contingent or other property interest in said rice allotment at her death, and whatever shadowy interest she may have had terminated at that time and no transfer of anything occurred by virtue of her death. Plaintiff is entitled to the refund sought. It is therefore adjudged and ordered that Plaintiff T. J. Babb,

Independent Executor under the will of Elizabeth Babb, deceased, recover of and from the United States of America the sum of Twenty-seven Thousand Six Hundred Four and 07/100 Dollars ($27,-604.07), plus interest thereon at the rate of six percent (6%) per annum from May 8, 1970. This is a final judgment.