**FIRST VICTORIA NATIONAL BANK,**
**Independent Executor under the Will**
**of T. J. Babb, Deceased**

v.

**UNITED STATES of America.**

**Civ. A. No. V–77–5.**

United States District Court,
S. D. Texas,
Victoria Division.

Jan. 23, 1978.

Joseph P. Kelly, Guitard & Henderson, Victoria, Tex., for plaintiff.

Helen M. Eversburg, Asst. U. S. Atty., Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

The Plaintiff, First Victoria National Bank, Independent Executor under the Will of T. J. Babb, Deceased, has filed this suit for refund of estate taxes paid under protest to the Defendant, United States of America. Plaintiff alleges that the taxes were illegally collected because the Internal Revenue Service erroneously included in the taxable estate of T. J. Babb 1142.6 acres of producer rice allotment.

The material facts of this case are undisputed. Prior to his death, T. J. Babb had, for many years, engaged in the production of rice. For the year 1973, farm marketing quotas pursuant to 7 U.S.C. § 1351, et seq., were in effect. For the crop year 1973, Babb had been issued 1208.3 acres of producer rice allotment. Prior to his death on July 4, 1973, Babb had allocated his producer rice allotment to certain lands and there were rice crops growing thereon at the time of his death. At the time of Babb's death, no national acreage allotment had been fixed for the crop year 1974 and Babb had not received any producer rice allotment for 1974. After Babb's death, a producer rice allotment for the year 1974 was determined and issued to the T. J. Babb estate.

After Babb's death on July 4, 1973, the Plaintiff duly qualified as Independent Executor of his estate. The Plaintiff filed an estate tax return which did not include as a taxable asset any producer rice allotment. The Internal Revenue Service (IRS) examined said estate tax return and, in addition to the land owned by Babb, included a taxable value of $50,000 for the crops growing on the land at the time of Babb's death. The IRS also included an amount of $250,-600 for 1142.6 acres of producer rice allotment. The inclusion of this latter amount resulted in the assessment of a deficiency in the tax payable of $89,265. Under protest, Plaintiff paid this tax plus interest in the amount of $14,369.99.

Plaintiff has filed a claim for refund of the taxes, plus interest, which claim was denied by the IRS on January 21, 1977. Plaintiff then filed its complaint in this Court on February 10, 1977.

On August 22, 1977, Plaintiff filed its motion for summary judgment, contending that the producer rice allotment is used up and that the related rice history is not a taxable asset, but a mere expectancy; therefore, Plaintiff contends it is entitled to judgment as a matter of law. The Defendant filed its motion for summary judgment, but withdrew said motion, conceding that the value of the producer rice allotment and related rice history is a question of fact.

In this case of apparent first impression, the Court is called on to answer three questions—(1) Was the current producer allotment "used up" at the time of Babb's death on July 4, 1973? (2) Does Babb's "rice history" constitute "property" within the meaning of the estate tax laws or is it, as Plaintiff contends, a non-taxable "expectancy"? (3) Was there a taxable "transfer" when Babb died on July 4, 1973?

In order to answer these questions, it is necessary to examine the statutes which

create the rice allotment and related rice history. The law governing rice allotments is included in the Agricultural Adjustment Act, 7 U.S.C. §§ 1351–1356, and in the regulations, 7 C.F.R. Part 730. The law provides that in any year in which the Secretary of Agriculture finds that the supply of rice will exceed the normal supply, he shall, prior to December 31, establish a marketing quota. Within thirty days thereafter, the Secretary shall conduct a national referendum of the preceding year's rice farmers. If two-thirds or more of the farmers approve the marketing quota, it shall go into effect. If less than two-thirds approve it, it shall be ineffective.

The Secretary, when, as here, the marketing quota goes into effect, apportions the national acreage allotment among the several states engaged in rice production. Apportionment is made either to "farms" or to "producers." The State of Texas is a "producer state." 7 C.F.R. § 730.62(11).

Apportionment to individual producers in producer states is regulated by 7 U.S.C. § 1353(b), which provides in part,

> "The State acreage allotment shall be apportioned to farms owned or operated by persons who have produced rice in the State in any one of the five years immediately preceding the year for which such apportionment is made *on the basis of past production of rice in the State by the producer on the farm taking into consideration the acreage allotments previously established in the State for such owners or operators; . . .* [other factors omitted]." (Emphasis supplied.)

This provision, which makes past production an important factor in determining the amount of current allotments, is what gives value to a rice farmer's "rice history." Its importance is even more apparent when one considers that a substantial penalty is imposed on those farmers whose rice production exceeds their quota. 7 U.S.C. § 1356. Because of the penalty provision, it is economically infeasible to grow rice without sufficient acreage allotment.

After a producer receives his allotment, he must then allocate it to specific farms by May 1 of the current year. After it is thus allocated, it may not be transferred or assigned to other farms.

As just stated, the first question the Court must consider is, "Was the current producer allotment 'used up' when T. J. Babb died on July 4, 1973?"

As can be seen from the statutes discussed above, the acreage allotments for rice are made each year. They are only valid for the year in which they are made. And once they are allocated to specific farms they cannot be transferred or assigned.

The facts in this case are undisputed as they relate to T. J. Babb's allotment for 1973. He received his rice allotment for 1973 and, in compliance with the regulations, he assigned the allotment to specific farms by May 1 of that year. At the time of Babb's death on July 4, 1973, his rice crops were growing on these farms.

It appears to the Court that any value which this current allotment had was "used up" before Babb's death because the allotment was only valid for the year 1973, and once the allotment was allocated to specific farms it could not be assigned or transferred. It is also clear from the record that the IRS assessed a value of $50,000 to the crops growing on Babb's farms at the time of his death. The Plaintiff paid the taxes that were due because of this assessed value. Therefore, any value which could be said to have merged into the growing crops has already been taxed. It is uncontested that no rice allotment for 1974 had been made prior to Babb's death.

■ Consequently, this Court holds that the Plaintiff cannot be required to pay taxes on the 1973 rice allotment for two reasons, to wit, (1) the rice allotment for 1973 was used up when it was allocated to the farms, and (2) the value of the 1973 allotment became a part of the growing rice crops upon which estate taxes have already been paid.

The second question this Court must answer is, "Does Babb's rice history constitute 'property' within the meaning of the estate

tax laws or is it, as Plaintiff contends, a non-taxable 'expectancy'?"

The definition of gross estate is found in 26 U.S.C. § 2031(a), which provides,

"The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all *property,* real or personal, tangible or intangible, wherever situated." (Emphasis supplied.)

The Plaintiff relies on this Court's ruling in *Babb v. United States,* 349 F.Supp. 792 (S.D.Tex.1972), for the proposition that all Babb had upon his death was an expectancy of receiving future rice allotments. The *Babb* case was before this Court on the question of the amount of estate taxes due on the rice allotment when Elizabeth Babb died. Elizabeth Babb was the wife of T. J. Babb, the decedent in the case at bar. In that case, this Court held that,

"Elizabeth Babb owned no vested, contingent or other property interest in said rice allotment at her death, and whatever shadowy interest she may have had terminated at that time and no transfer of anything occurred by virtue of her death."

After holding that the 1966 allotment was used up prior to Mrs. Babb's death, the Court noted,

" . . . there was nothing left but a history of rice growing over preceding years, which would become important only if, following the procedures required, allotments were to be established for the next year. There is no marrow to such a history."

The Court thus ruled in favor of Plaintiff and ordered a refund of estate taxes paid.

Other than the *Babb* case, there are no cases directly on point. However, the Fifth Circuit has provided some guidance.

In *Allen v. David,* 334 F.2d 592 (5th Cir. 1964), the Plaintiffs, Texas rice farmers, sued members of the Agricultural Stabilization and Conservation Service, U.S. Department of Agriculture. The suit was brought because the Defendants had cancelled the Plaintiffs' acreage allotments. While holding that it had no jurisdiction because the Plaintiffs failed to exhaust their administrative remedies, the Court noted:

"There are no personal rights of property created in the plaintiffs by the Act which would allow them to recover in a suit against governmental functionaries. The Agricultural Act is a public law, not a private law; therefore no vested rights may be obtained under it. (citations omitted) . . . the Act and its attendant regulations do not vest in the plaintiffs any legally recognizable rights other than those specifically enumerated therein; . . . "

A more recent case is *Hudspeth v. United States,* 519 F.2d 1055 (5th Cir. 1976). In that case, the Plaintiffs, cotton farmers, brought an action for refund of income taxes. The taxpayers had deducted a decrease in their cotton allotment as a business loss. While holding that this decrease did not result in a deductible loss because there was no closed transaction, the Court made the observation that,

"There can be no such thing as a right to an ongoing allotment for any particular year. While the fact that allotments are based on production history creates a reasonable expectancy that some future cotton allotment will be assigned to the farm generating the history, the statutory scheme does not contemplate a constant acreage allotment for any farm tract, but one which will vary from year to year because each tract allotment is directly proportional to the size of the national acreage allotment. (citation omitted) *Thus, from a pure property law standpoint, an allotment carries no vested rights to acreage allotments in future years."* (Citing *Allen v. David, supra.)* (Emphasis supplied.)

The regulations regarding cotton allotments are very similar to those regarding rice allotments, and this Court believes that the same principles announced in *Hudspeth, supra,* would apply to rice allotments.

The Defendant's position regarding this question is essentially that the producer

allotment and rice history constitute transferable intangible property and, as such, are subject to federal estate taxes. To support this position, the government cites *Cutbirth v. U. S.,* 76–2 U.S.T.C., par. 13,147 (N.D. Tex., June 16, 1976). Apparently the only portion of the proceedings reported is the jury charge, in which Judge Woodward instructed the jury to find the value of rice allotment owned by the decedent at his death. The value was to be used in computing estate taxes. It is to be noted that the question of whether the rice allotment constituted property was never raised. The Court and the parties just assumed that it was taxable property. Because of this assumption, the case is of limited precedential value on this issue.

The Defendant further argues that a Texas Court of Civil Appeals has held that cotton allotments constitute property. He refers the Court to *Miquez v. Miquez,* 453 S.W.2d 514 (Tex.Civ.App., Beaumont, 1970). That case, however, deals with rice allotments and holds that,

"They [rice allotments] are therefore *not vested property rights,* but they have some attributes of personal property. . . . Although rice acreage allotments are not vested property rights, there is no doubt that the right to such allotment is a valuable right." (Emphasis supplied.)

■ In view of the absence of any authority to the contrary, this Court believes that the better weight of reasoning and logic requires a holding that the history of rice production does not constitute property within the meaning of the estate tax laws.

The third question for the Court's consideration is, "Was there a taxable 'transfer' when T. J. Babb died on July 4, 1973?"

At the outset the Court notes that it is questionable whether or not the Plaintiff sufficiently brought this question to the attention of the Internal Revenue Service in accordance with 26 U.S.C. § 7422 and 26 C.F.R. § 301.6402–2(b)(1). However, the Defendant has stated,

"Defendant understood Plaintiff to mean that decedent had no transferable rights

on the date of his death." (Defendant's Reply Brief, p. 1.)

The Defendant also asserts,

"Plaintiff may not obfuscate the real issue before the Court. That issue is whether as a matter of law decedent did or did not hold transferable property rights in the so-called Rice Allotment Program on his date of death. If this Court believes, as a matter of law, that there were no such transferable rights in and to rice allotments held by the decedent, then the Plaintiff is entitled to summary judgment." (Defendant's Reply Brief, p. 5.)

■ This Court is of the opinion that Defendant's failure to raise any objection to Plaintiff's assertion of this ground for refund, coupled with the above statements of Defendant constitutes a waiver of the right to have the question presented at the administrative level. *Tucker v. Alexander,* 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253 (1927); *United States v. Felt & Tarrant Co.,* 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); *Niagara Mohawk Power Corp. v. United States,* 525 F.2d 1380, 207 Ct.Cl. 576 (1975).

The provisions for transferring the producer "allotment and related history acreages" are found in 7 C.F.R. § 730.76, which states in part, "If a producer dies or withdraws from the production of rice, his allotment and related history acreages *may* be transferred . . . to another person or persons: . . . ." This regulation then goes into great detail about the conditions which must be met before such a transfer is valid.

■ The provisions regarding the disposition of the history of rice production is found in 7 U.S.C. § 1353(f)(1), which provides that upon the death of a producer in a "producer" state (as is Texas), "his history of rice production *shall be apportioned* in whole or in part among his heirs or devisees *according to the extent to which they may continue,* or have continued, his farming operations, *if satisfactory proof of such succession of farming operations is furnished the Secretary.*" (Emphasis supplied.)

The Plaintiff argues that the above statute and regulation makes it impossible for a transfer of the allotment and related rice history to have occurred on Babb's death because certain conditions must be met and approval of the Secretary obtained. Therefore, Plaintiff contends, since no transfer occurred on Babb's death, the allotment and related rice history cannot properly be considered a taxable transfer.

With regard to this argument, the Plaintiff once again refers this Court to its prior ruling in *Babb v. United States, supra.* In that opinion, this Court discussed the general rule that the " . . . tax imposed upon the transfer of property by reason of death . . . is measured by what the decedent relinquished or transferred in possession or enjoyment as of the date of death, and not according to subsequent events." *Babb, supra,* at 795. The Court then noted that the clause "shall be apportioned" in 7 U.S.C. § 1353 clearly shows that "any transfer could only be accomplished by subsequent events, and with limitations as to whom the transferee might be." *Babb, supra,* at 796.

Although there is scant authority on this particular point, this Court is of the opinion that the overall scheme of the rice allotment statutes and regulations requires a holding that there was no transfer on the death of T. J. Babb. Any transfer of rice history after Babb's death was conditional on subsequent events.

There being no material issue of fact, Plaintiff's Motion for Summary Judgment should be, and hereby is, granted.

IT IS SO ORDERED.